# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

In the Matter of Osseo Area Schools,
Independent School District No. 279,

Civil File No. _____

Plaintiff,

**COMPLAINT AND APPEAL OF
HEARING OFFICER DECISION
PURSUANT TO 20 U.S.C. § 1415(i)(2)**

v.

M.N.B., by and through her Parent,
J.B.

Defendants.

Osseo Area Schools, Independent School District No. 279 appeals the Findings of Fact,

Conclusions of Law, and Order issued by the Administrative Law Judge for the Minnesota

Office of Administrative Hearings in a state level special education due process hearing.

## I.     Jurisdiction and Venue

This action is an appeal of the Order served on March 17, 2017 from the state level due

process hearing decision held pursuant to the federal Individuals with Disabilities Education Act

("IDEA") and corresponding Minnesota law.[1]  *See* 20 U.S.C. § 1415(i)(2)(A) (IDEA); Minn.

Stat. § 125A.091.

1.     This Court has jurisdiction over this action pursuant to 20 U.S.C. § 1415(i)(2).

---

[1] Exhibit 1 (ALJ's Order). The Order was served on the parties on March 17, 2017. (*See* Certificate of Service by K. McCausland attached to the Order). Specifics of the Order were included in the ALJ's Order on Motion for Reimbursement served on the parties May 2, 2017 (Exhibit 2).

2.      Venue in this district is authorized by 28 U.S.C. § 1391(b) because the defendants are
        residents of the State and reside within this Judicial District, and the events giving rise to
        the Complaint occurred within this Judicial District.

II.     **Parties**

3.      Plaintiff Osseo Area Schools, Independent School District No. 279, ("Osseo" or "ISD
        279" or "District") is a public school district in Minnesota.  ISD 279 is an award-winning
        school system that inspires and prepares all students with the confidence, courage, and
        competence to achieve their dreams; contribute to community; and engage in a lifetime of
        learning.  ISD 279 is the fifth-largest school district in the state, serving all or parts of
        Brooklyn Center, Brooklyn Park, Corcoran, Dayton, Maple Grove, Osseo, Plymouth, and
        Rogers, Minnesota.  The District serves approximately 20,000 students from pre-
        kindergarten through grade twelve in seventeen elementary schools, four middle schools,
        and three senior high schools. It provides education beyond grade twelve through its adult
        learning and special education transition programs.

4.      The District, under the management and control of its duly elected School Board,
        administers the public schools situated within District boundaries.  The District's
        principle office is located at 11200 93rd Avenue North, Maple Grove, Minnesota 55369.

5.      J.B. ("Parent") is the parent of M.N.B. ("Student" or "M.N.B.").  J.B. and M.N.B. reside
        in Big Lake, Minnesota, 55309.   Osseo Area Schools is not the Student's  resident school
        district.  Instead, because she and her mother live within the boundaries of the Big Lake
        Public School District, Independent School District #727 ("Big Lake" or "ISD 727"), Big
        Lake is M.N.B.'s resident school district. *See* Minn. R. 3525.0210 subp. 39 (defining
        "resident district" as the school district in which the parent resides.)

2

III.    **Factual Background**

6.      The Minnesota Legislature has established an enrollment options program to enable a student to attend a school in a district in which the student does not reside. Minn. Stat. § 124D.03.

7.      "The resident district is not required to provide or pay for transportation between the pupil's residence and the border of the nonresident district." Minn. Stat. §124D.03 subd. 8. Minnesota law specifically precludes any obligation by a school district to transport those students whose parents have made a choice to open enroll outside of their resident district. This applies to all students with and without disabilities.

8.      The Osseo District complies with Minn. Stat. §124D.03 and provides transportation for any open enrolled students within the District boundaries. It does not provide transportation for any student between the open enrolled student's residence and the District boundaries.

9.      *The Student.* M.N.B. is a bright ten year old, 5th grade girl who currently attends school at North Education Center ("NEC"). The Student is open enrolled from Big Lake to the Osseo District. She attends a school program at NEC which is a program of Intermediate School District 287 ("Intermediate District 287" or "287").

10.     Intermediate School District 287 is composed of 12 school districts. *See* Minn. Stat. Ch. 136D. Osseo is a member of District 287.

11.     The Student attends a federal setting IV special education program. It is a special education program administered by 287 for its member districts. A federal setting IV program is a segregated special education site meaning that no general education students attend at NEC. *See* 34 C.F.R. 300.114 (a)(ii) (requiring districts to have a continuum of

3

services to serve student with special education needs); Minn. R. 3525.3010 subp. A (1)(requiring the same). Osseo meets its obligation under the IDEA to have a continuum of services available to its students in part by contracting with Intermediate District 287.

12. Prior to open enrolling in Osseo, M.N.B. was enrolled in her resident district, Big Lake. It contracted with a different intermediate school district, Intermediate School District 916 ("Intermediate 916" or "916") to provide its federal setting IV programming. Big Lake Schools placed M.N.B. in 916's federal setting IV program, Karner Blue Education Center. This placement was accomplished through the Individual Education Program ("IEP") team process and included the Student's Parent. *See* 20 U.S.C. §1414 (1)(A) (defining elements necessary to an IEP); §1414 (1)(B) (the IEP team includes parent.).

13. Because Big Lake placed the Student outside of its district boundaries, it was required by state and federal law to provide transportation to the Student.

14. M.N.B.'s last IEP was developed in October 2016 by her resident district IEP team. The IEP states that "[M.N.B.] will be transported individually to and from school. [M.N.B.] struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her."

15. During the 2015-2016 school year, M.N.B. was transported to and from Karner Blue Education Center by the Parent and the Parent was reimbursed for mileage expenses pursuant to a contract between Big Lake School District and the Parent.

16. The Parent chose to open enroll the Student in Osseo rather than continue enrollment with Big Lake, the Student's resident school district. On September 8, 2016, the Parent completed an application for M.N.B. to open enroll into Osseo Area Schools. The Parent

4

and M.N.B. continued at the time and still reside in Big Lake, Minnesota, 55309. Big

Lake Schools continues to be M.N.B.'s resident school district.

17.   Osseo must accept open enrolled students pursuant to state law and it did so advising the

Parent upon her presentation of an application for the Student that Osseo did not transport

any open enrolled student beyond its borders.

18.   *Minnesota School Transportation Laws.* Under Minnesota law, the open enrolling

district is not required to transport a student from the student's home to the boundary of

the open enrolling school district. Minn. Stat. § 124D.03, subd. 8.

19.   Minnesota's enrollment options legislation provides "[i]f requested by the parent of a

pupil, the nonresident district shall provide transportation within the district." Minn. Stat.

§ 124D.03, subd. 8.  The District offered to transport the Student within its boundaries.

Upon the Parent's request, it agreed to pay the Parent to transport within its boundaries.

20.   *The District's Transportation Practice.* Osseo's current practice is to transport open

enrolled students from Osseo's boundary to the child's school. This applies whether the

student is disabled or not.

21.   *Prior Transportation Practice.* During the 2014-2015 school year, Osseo administrators

began a process of examining Osseo's practice regarding transportation of open enrolled

students. At that time, general education students and special education students *without*

*transportation on their IEP* met the Osseo school bus at a designated bus stop located

within Osseo boundaries. The families of the open enrolled student transported the open

enrolled student to a designated bus stop located within Osseo boundaries closest to the

student's home. Osseo transported these students from Osseo's boundary to the child's

school. However, if a student had an IEP that *included transportation* as a related service, Osseo transported from the student's home to the assigned Osseo school.

22.    In reviewing its practice, Osseo administrators discussed that the practice in place during the 2014-2015 school year was not an equitable practice. Administrators also recognized that the practice was not in line with state law because Minnesota law does not require an open enrolling district to cross district boundaries to collect students.

23.    In reviewing its practice, Osseo's administrative team considered the impact its practice had on all students attending Osseo's schools and programs. By dedicating buses to cross district boundaries to collect students from other school districts, including school districts that were not contiguous with Osseo, the practice was resulting in longer bus rides for students on Osseo's traditional routes. This impacted both special education and general education students. The administrators recognized that these longer rides were not beneficial to the District's students.

24.    Osseo's transportation department looked at the cost and the impact of scheduling logistics arising from the practice of having buses cross district boundaries to collect students.

25.    These considerations were set forth in a memorandum for Osseo's administrative cabinet along with a recommendation to discontinue the practice of crossing district boundaries to bus students.

26.    Osseo's cabinet met on May 13, 2015 to discuss a change in its practice. In attendance were Kate Maguire, ISD 279 Superintendent; Troy Schreifels, Director of Transportation; Kelli Parpart, ISD 279 Assistant Superintendent; Teri Stoloch, ISD 279 Assistant Superintendent; Paula Rackner, ISD 279 Enrollment Office; Margaret Westin, ISD 279

General Counsel, and Kate Emmons, Director of Student Services. The administrative

team considered the impact to the District's transportation model that arose from the

practice of sending buses across district boundaries. They discussed the negative impact

that longer rides had on students – both general education and special education students.

They discussed Minnesota's legal requirements; noting that Minnesota law does not

require school districts to cross district boundaries to collect open enrolled students. They

discussed the fact that many of the other school districts in the Minneapolis-St. Paul

metropolitan area had never sent buses across district boundaries to collect students, but

instead were requiring families of all open enrolled students to get the student to the

district boundary, including students with special education transportation in their IEPs.

27.    The cabinet team discussed the cost implications of its practice and the fact that even

though some of the costs could be eventually recovered from the state, the cost recovery

was partial only and reimbursement was not received within the same school year as the

cost was incurred.

28.    The cabinet team discussed the additional human resources expended to provide a route

for one student to and from a home in another school district.  Often the bus was

dedicated to only one student and the route was very lengthy.  The administrative team

discussed that when one bus was used in this inefficient manner, the bus was out of the

fleet and not able to be used for other special education students or general education

students during that time period.

29.    At the May 13, 2015 meeting, the cabinet made the decision to change the District's

practice. They decided that all open enrolled families, both general and special education,

including those with transportation as a related service on the IEP, would be responsible

to get their students to a bus stop within Osseo's boundary. For those students with transportation as a related service on the IEP, the District would provide the related service of special transportation and any accommodations (such as a harness, hand to hand transport to board and exit the bus, special bus type, etc.) within the District's boundaries.

30.     In July of 2015, the District provided written notice to each family of an open enrolled student with transportation on their IEP that the District would end its gratuitous practice of transporting some special education students from home to school and would instead comply with the state law for all students.

31.     The change was effective at the start of the 2015-2016 school year.  The change in practice did not apply to open enrolled special education students that had been previously transported from their homes to school. The District continued to transport those students for a full school year in order to allow them sufficient time to make arrangements for transportation from home to a District bus stop.

32.     *MDE Complaint.* By letter of July 15, 2016, the Minnesota Department of Education ("MDE") notified Osseo that it would be investigating a systemic complaint brought by the Minnesota Disability Law Center. The special education complaint had been brought on behalf of all students open enrolled to Osseo that had transportation services on their IEPs. The complaint letter was directed to the District's Superintendent, and stated, in relevant part:

> The purpose of this letter is to inform you that Minnesota Disability Law Center has filed a special education complaint with the Minnesota Department of Education (MDE) on behalf of all students (Students) attending Osseo Public School District ISD #0279-01 (District) through the State's enrollment options program and have transportation services in their IEP.

8

(July 15, 2016, MDE Complaint letter, at 1).

33.    The MDE complaint letter set forth one complaint allegation. It alleged that Osseo's

decision to change its bussing practices for open enrolled students violated Part B of the

IDEA. The letter set forth the allegation as follows:

> The Complaint alleges the District's unilateral change in busing
> practices for open enrolled students with transportation included in
> their IEP denies the Students a free appropriate public education
> (FAPE). Specifically, the Complaint alleges the District's practice
> denies the Students a FAPE by not providing them with
> transportation to and from their homes and school as indicated in
> their IEPs.

(July 15, 2016, MDE Complaint letter, at 1).

34.    On August 12, 2016, Osseo submitted a Response to the Complaint, denying that the

District had violated federal or state special education law. By letter of October 12, 2016,

MDE issued a decision on the complaint. MDE determined that Osseo had violated the

IDEA and it required Osseo to take corrective action by revising its transportation

practice, changing the District's electronic IEP system template language on

transportation, and sending letters to parents offering the opportunity to attend meetings

to discuss whether their child required transportation between the student's home and

school to provide a FAPE. The October 12, 2016 letter did not dictate that the District

provide any compensatory education or similar relief to any student or students.  It only

required Osseo to send letters and offer to hold meetings with parents to discuss whether

transportation between the student's home and school was necessary for a FAPE.

35.    Osseo complied with MDE's directive to send an MDE approved letter to students with

special education transportation on their IEPs and to offer to hold meetings to discuss

transportation.

36.   Osseo sought appeal of the October 12, 2016 MDE decision on the basis that the decision was in excess of MDE's authority and was otherwise erroneous because the application of the state's open enrollment statute was not an issue of FAPE under IDEA. MDE presented no authority in law, rule or case law that supported its unilateral determination that despite the state law, its guidance that special education students receive transportation in excess of the what state law requires is law. Nor did MDE present any evidence of rulemaking that established this enhanced right for some special education students. The appeal was dismissed for lack of jurisdiction by the Minnesota Court of Appeals because the District served the MDE as the agency that made the decision and not the families represented by the Minnesota Disability Law Center.

37.   M.N.B. was not enrolled in the Osseo School District at the time that the Osseo administration was evaluating its transportation practice. The decision to provide transportation within its boundaries to all students was made before the Parent enrolled the Student. The Parent has acknowledged that she was informed of that decision before she chose to enroll her daughter.

38.   ***Dispute between the District and Parent.*** On September 8, 2016, the Parent completed an application for M.N.B. to open enroll into Osseo Area Schools.

39.   On September 9, 2016, the District's enrollment center completed an enrollment checklist for the Student and noted "No bus needed."

40.   On September 20, 2016, Joy Fredrickson, Osseo Student Services Coordinator, contacted the Parent by telephone to set up a meeting to address the educational placement for M.N.B. Fredrickson informed the Parent of Osseo's transportation practice for all open enrolled students and that the District would transport only within its borders.

41. During the September 20, 2016 telephone conference between Fredrickson and the Parent, the Parent indicated that she understood Osseo's transportation practice for open enrolled students.

42. During the September 20, 2016 telephone conversation with Fredrickson, the Parent inquired about mileage reimbursement if she drove M.N.B. to school in the Parent's vehicle and she committed to sharing the transportation contract that she had with Big Lake for the 2015-2016 school years.

43. On September 20, 2016, the Parent sent Fredrickson an email and attached the prior transportation contract between herself and Big Lake. Also attached were email exchanges between the Parent and Deb Humann, Compliance Monitor for the Minnesota Department of Education ("MDE"). On September 7, Humann sent an email to the Parent stating that "Maple Grove or Osseo should set up a pick-up spot at their border and provide transportation to the school of enrollment. You would have to arrange transportation to this pick-up location." Humann noted that she had consulted with Julie Belisle in Transportation at MDE about this guidance. The Parent responded to Humann that the federal law requires open enrolled special education students with transportation on their IEPs to be transported from their home to school.

44. The next day, Humann contradicted her first email and provided a second email that stated that federal law requires that "students who have door to door special transportation in their IEPs should be provided this service." The Student in this case does not have "door to door transportation" written on her IEP.

45. At that time, the Parent made a choice to eschew educational services from her resident district and chose to enroll M.N.B. in Osseo Area Schools. This parental preference is allowed under Minnesota's enrollment options program.

46. On September 22, 2016, Osseo convened an IEP team meeting to discuss M.N.B.'s special education program. The team including the Parent agreed that the Student required a federal setting IV, or separate school, for the 2016-2017 school year. The team agreed to implement the last agreed upon or "stay put IEP" developed by the Student's resident district while the Student became adjusted to the new school.

47. Osseo was not a party to the contract between the Parent and Big Lake.

48. The contract between the Parent and Big Lake was never made a part of the Student's IEP.

49. The IEP does not require that the Student be transported by her mother.

50. The IEP does not state that the Student's special needs require her to be transported from the door of her home to the school she attends. The only special education need in the IEP regarding transportation was to not be near students whose verbalizations might annoy her.

51. At the September 22, 2016 IEP team meeting, Fredrickson again went over Osseo's transportation practice for open enrolled students with the Parent. She explained that where a student has transportation as a related service on the IEP, Osseo provides special education transportation from Osseo's district boundary to the student's school. The Parent indicated she understood the practice.

52. At the September 22, 2016 IEP team meeting, Fredrickson explained that Osseo would provide special education transportation for M.N.B. from the District's boundary to NEC.

12

The Parent indicated a desire to drive M.N.B. to and from school herself, rather than have specialized transportation provided for M.N.B. by Osseo on one of its vehicles.

53. Fredrickson indicated that Osseo would be willing to reimburse the Parent for transportation. Fredrickson indicated that Osseo would provide mileage reimbursement to the Parent for transportation from the District's boundary to M.N.B.'s school.

54. By email of October 6, 2016, the District confirmed to the Parent that the District would reimburse for mileage from the District boundary to M.N.B.'s school. Attached to the email was a contract between Osseo and the Parent specifying reimbursement at the 2016 standard IRS mileage rate, along with a log sheet through which the Parent could submit monthly reimbursement totals. The Parent did not sign the contract. She advised that she would transport the Student.

55. On October 6, 2016, the Parent toured programming at NEC and met with staff. The Parent attended a follow up meeting to discuss M.N.B.'s programming at NEC on October 13, 2016.

56. M.N.B. began attending NEC in October 2016 on a partial day to acclimate her to her new school. She began attending full time on October 24, 2016.

57. An October 28, 2016 Prior Written Notice ("PWN") with attached IEP was provided to the Parent and on November 8, 2016 the Parent signed the PWN indicating that the Parent needed further information.

58. A November 14, 2016 PWN with attached IEP was provided to the Parent. The attached IEP contained General Accommodations including, *inter alia*, a statement that "[M.N.B.] will be transported individually to and from school. [M.N.B.] struggles with other students who are in close proximity to her that display vocalizations, which can be really

frustrating to her." This accommodation statement regarding transportation is the same statement that was contained in M.N.B.'s October 26, 2015 stay put IEP from Karner Blue Education Center.

59.     The plain language of the IEP does not state that the Student must be transported from the door of her home to school.  There was no evidence before the ALJ that supported her conclusion that the Student's disabilities required her to be transported from her door to the school rather than from a District bus stop to her school. The only evidence in this case was that the Student was to be transported alone.

60.     On November 21, 2016, the Parent rejected the November 14, 2016 PWN and the offer of transportation.

61.     On December 6, 2016, the Parent attended a Conciliation Conference with the District. The parties were unable to reach agreement on the proposal for special education transportation.

62.     On December 9, 2016, a Notice of Post Conciliation Conference was sent to the Parent. The Notice of Post Conciliation Conference stated the Parent had requested "special education transportation and reimbursement from home to school and school to home" for four trips per day. The District had proposed a compromise of special education transportation from the district boundary to school and school to district boundary. The District's proposal was to reimburse the Parent for four trips per school day between the border of the District and the school that the Student was attending.

63.     Following the Conciliation Conference, the District sent a Notice of Post Conciliation Conference confirming that the District's proposal was to provide the Parent with reimbursement for transportation from the Osseo District boundary to North Education

14

Center and from school to the Osseo District boundary. On December 22, 2016, the Parent signed the Notice of Post Conciliation Conference indicating "I need further information" and attached a letter. With respect to the transportation dispute, the letter stated: "We are also agreeing that [Student's] IEP should include the transportation statement noting her needs for individual transportation. And we are clarifying that we believe Osseo should be completely responsible for transportation but understand Osseo has a different opinion on its transportation responsibilities."

64.     The parties remain in dispute as to special education transportation for M.N.B.

65.     The Parent filed a special education complaint against Osseo with the Minnesota Department of Education ("MDE"). On November 1, 2016, the MDE issued a complaint letter (MDE Complaint #17-027C) against Osseo with a single issue statement, to wit: "The Complainant alleges the District failed to provide transportation services in conformity with the Student's IEP. Specifically, the Complainant alleges the District failed to provide the Student transportation to and from school and instead only agreed to transportation services from the District's boarder to the school."

66.     On December 19, 2016, the District filed a request for a due process hearing with the MDE seeking an order that its proposal to provide the Student with the agreed upon federal setting IV special education program at an agreed upon location and with transportation between the District border and the school was consistent with the IDEA.

67.     On December 22, 2016, MDE issued an abeyance letter notifying the Parent and the District that MDE was holding Complaint #17-027C in abeyance pursuant to 34 C.F.R. 300.152(c)(1) because the issue raised in the Parent's special education complaint was the same issue raised in the District's due process hearing request.

68.   On March 17, 2017, following briefing by the parties, the Administrative Law Judge issued an summary order requiring the District to transport the Student from her home in Big Lake to NEC and requiring the School District to reimburse the Parent for transportation expenses since October 17, 2016.

69.   The ALJ issued a supplemental order over the District's objection, ordering that the Parent be reimbursed for four trips per day between her home and the school.

**IV.   Grounds for Appeal**

70.   This action involves a dispute over what transportation is required for M.N.B. under the IDEA and Minnesota Chapter 125A.  The Parent asserts that Osseo must transport M.N.B. from the door of her home to the school of her choice.  Osseo contends that the District must provide special transportation only from Osseo's boundary to M.N.B.'s school.

71.   The Eight Circuit Court of Appeals has decided that when a child is enrolled based on parental preference; a school district does not violate the IDEA if it refuses to provide special education transportation beyond the boundaries established by the school district. *Fick ex. Rel. Fick v. Sioux Falls Sch. Dist. 49-5*, 337 F.3d 968 (8th Cir. 2003).

72.   The ALJ's decision was legally and factually erroneous.

73.   The District requested that the ALJ recuse herself because at the time that the MDE issued its guidance statements regarding transportation, the ALJ was an MDE employee who was in charge of special education compliance. She may have not formally been involved in creation of the guidance but she was mandated to enforce it at that time. The ALJ's Order relied on the same guidance rather than on federal and state law.

74.     The ALJ erred when she found without any support in the record, that the prior contract between the Parent and her resident school district was incorporated into the Student's IEP.

75.     The plain language of the IEP stated that the Student needed to be transported to and from school without other students who might annoy her. The IEP did not state that the Student was to be transported from the door of her home to her open enrolled school.

76.     The ALJ further erred when she determined without any factual basis whatsoever that the Student needed the accommodation of "door to door transportation" in order to receive a FAPE.

77.     There was no evidence in the record that the Student's educational needs required her to be picked up at her front door (such as may be the case for student who is medically fragile.) Despite that complete lack of evidence, the ALJ found the Student needed door to door transport in order to have a FAPE.

78.     Unlike Big Lake who by federal law was required to transport a student that it placed outside of the District, Osseo has no such obligation because it was the Parent who choose to place her Student in another district. The ALJ erred when she made a finding that the Student's resident district paid for her transportation from home to school while neglecting to consider that the resident district is required to provide transportation outside its borders when it chooses to place a student outside its boundaries. In this case, the Parent made the choice to enroll the Student outside of her resident district, not the resident district and not the Osseo Public Schools.

79.     The ALJ erred when she found that during the school year, apparently referring to the 2016 school year, the District began examination of its open enrollment transportation

17

practice. The District had already completed its examination, notified those impacted and clearly provided that information to the Parent.

## V.    Relief

80.    The District seeks an order holding that the District meets its obligation under the IDEA and Minn. Stat. Ch. 125A by providing transportation as a related service from Osseo's boundary to the school of enrollment when the student's IEP team determines the student requires special education transportation; and

81.    That only where an IEP team determines that a student's educational needs require door to door transportation is such transportation required; and

82.    That the District meets its obligations under IDEA and Minn. Stat. 125A when M.N.B. is transported to and from the District boundary to school as called for in her IEP; and

83.    That the Parent is not entitled to future reimbursement for traveling to the open enrolled school four times per day nor is the District required to reimburse the Parent except for the 2016-2017 school year and only for two trips per day from the District boundary and to the school.

BOOTH LAW GROUP LLC

Dated: June 15, 2017

Roseann T. Schreifels, #0257278
Laura Tubbs Booth, #186910
10520 Wayzata Blvd, Suite 200
Minnetonka, MN 55305
(763) 253-4155
rschreifels@boothlawgroup.com
lbooth@boothlawgroup.com
*Attorneys for Plaintiff*

18