**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

In the Matter of Osseo Area Schools,     Case No. 0:17-cv-02068-DSD-HB
Independent School District No. 279,

          Plaintiff,          **MEMORANDUM IN SUPPORT OF**
                           **DEFENDANTS' MOTION TO**
v.                        **DISMISS THE COMPLAINT**

M.N.B., by and through her Parent,
J.B.,

          Defendants.

_____

Defendant M.N.B., by and through her Parent, J.B., ("M.N.B.") moves to dismiss the Corrected Amended Complaint (ECF No. 13), filed by Plaintiff Osseo Area Schools, Independent School District No. 279 ("the District"), for lack of subject matter jurisdiction.

**INTRODUCTION**

M.N.B. is a student with a disability who requires specialized transportation as part of her Individualized Education Plan. The District refused to provide her with specialized transportation between her home and school because she lives outside of the District's boundaries. The District filed this action after an administrative law judge ("ALJ") ruled in M.N.B.'s favor in a due process hearing and determined that the District is responsible under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, for M.N.B.'s specialized transportation between her home, which is outside the District's boundaries, and school. At the due process hearing, the District's position was straightforward: that it is not, as a matter of law, required to transport **any** student—

including students who have special needs for transportation because of their disabilities—who live outside the District but are enrolled in the District through Minnesota's open enrollment statute, Minnesota Statutes § 124D.03.  In essence, the District asked the ALJ to ratify its newly adopted transportation policy, under which it stopped transporting students outside its boundaries, including those with specialized transportation needs.  The ALJ disagreed with the District's stance and policy, finding that the IDEA requires the District to provide for transportation between home and school for M.N.B., whose Individualized Education Plan called for her to be individually transported to and from school.

Now, in this action, the District takes a new position: that it is not required to transport M.N.B. between her home and school **because her individual needs are not substantial enough or the right kind** for the District to be legally required to transport her outside its boundaries to and from her home.  Unlike in the administrative proceeding, which was decided on motions for summary disposition regarding application of the District's transportation policy, the District now raises a factual dispute about the extent of M.N.B.'s individual needs.  But this is a new and distinct issue that the District failed to raise in the administrative proceeding.  Therefore, the District failed to exhaust the issue of M.N.B.'s transportation needs and the Court should dismiss this action for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

M.N.B. is a ten-year-old student who was in 5th grade during the 2016-17 school year.  (ECF No. 13, Corrected Am. Compl. ("Compl."), ¶ 9.)  M.N.B. is a student with a

disability and has an Individualized Education Plan ("IEP").  (ECF No. 1-1, Order Granting Student's Mot. for Summ. Disp. And Denying District's Mot. for Summ. Disp. ("Order"), at 2.)  She is enrolled in the District and attends school at North Education Center ("NEC") where the District chose to place her.  NEC is located in the Robbinsdale School District and is operated by Intermediate School District #287.  (Compl. ¶ 9.)  M.N.B. resides in Big Lake, MN, which is outside the geographic boundaries of the Osseo District.  (*Id.* ¶ 5.)  During the 2015-16 school year, M.N.B. was enrolled in the Big Lake school district and attended school at a program run by Northeast Intermediate District #916, which was located outside the Big Lake school district.  (*Id.* ¶ 12.)  M.N.B.'s most recent IEP was developed during that school year and included the related service of specialized transportation.  Specifically, it states that M.N.B. "will be transported individually to and from school. [M.N.B.] struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her."  (*Id.* ¶ 14.)  In the 2015-16 school year, M.N.B.'s parent transported her between her home in Big Lake and the Northeast Intermediate District #916 school, and the Big Lake district reimbursed the parent for mileage expenses.  (*Id.* ¶ 15.)

In May 2015, Osseo Area Schools made a policy decision to stop providing transportation between home and school for students with IEPs who live outside the District and are open enrolled into the District.  (*Id.* ¶ 29.)  This policy change meant that, for students whose IEPs included special transportation needs, the District would provide the specialized transportation only within its boundaries.  (*Id.*)  Other District students who lived outside of the District's boundaries and had specialized transportation written into

their IEPs filed a complaint with the Minnesota Department of Education ("MDE"), which investigated a systemic complaint against the District on behalf of 64 students who were open enrolled into the District and had specialized transportation on their IEPs but who were told, as a result of the District's policy change, that they would no longer receive transportation as listed in their IEPs. (*Id.* ¶ 32.) On October 12, 2016, the MDE issued a decision finding that the District's new transportation policy violated the IDEA because it failed to permit individualized determinations about whether transportation between home and school would be necessary to provide an individual student with a free appropriate public education ("FAPE").[1] (*Id.* ¶ 34.)

The District appealed MDE's decision to the Minnesota Court of Appeals, but the appeal was dismissed because the District committed a jurisdictional service error. (*Id.* ¶ 36.) Because the District failed to properly appeal the MDE's decision, that decision remains final. As part of the corrective action for that decision, MDE required the District to revise its transportation practice regarding open-enrolled students with transportation needs because its new transportation practice violated those students' rights under the

---

[1] A free appropriate public education (FAPE) means "special education and related services" that, among other things, are provided in conformity with the child's IEP. 20 U.S.C. § 1401(9). The Supreme Court has held that a student is provided with a FAPE if the IEP is "reasonably calculated to enable the child to receive educational benefits." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 995–96 (2017) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 (1982)). The IDEA defines "related services" as "transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education . . . ." 20 U.S.C. § 1401(26).

IDEA.  (Declaration of Daniel Stewart ("Stewart Decl."), Ex. 3 ("MDE Compl. Decision 16-38C") at 20.)[2]

Meanwhile, in the fall of 2016, M.N.B. enrolled in the District through Minnesota's open enrollment program.  (Order at 6; Compl. ¶ 38.)  After her enrollment, the District refused to pay for transportation expenses between M.N.B.'s home and NEC, relying on its policy that it transports open-enrolled students only within its boundaries.  (*See* Compl. ¶¶ 40-53.)  The District offered to reimburse the parent for mileage between the District's boundary and M.N.B.'s school.  (*Id.* ¶ 54.)  M.N.B.'s school, NEC, is not located within the District's boundaries, but rather is located in the Robbinsdale School District and operated by Intermediate School District #287.  The District did not dispute that it would reimburse M.N.B.'s parent for the portion of the trip between the District's boundary and NEC in the Robbinsdale District, but did not agree to reimburse the parent for the portion of the trip between the District's boundary and M.N.B.'s home.  (*See id.*)  The parent rejected a prior written notice with the District's offer of transportation.  (*Id.* ¶ 60.)

The District filed a request for a due process hearing pursuant to 20 U.S.C. § 1415, requesting that the ALJ order that M.N.B.'s "IEP state that the provision of transportation as a related service is required only between Osseo's boundary and M.B.'s school . . . ." (Stewart Decl., Ex. 2 ("District's Am. Due Process Hearing Request") at 19.)  Both parties

---

[2] This complaint decision, and the other exhibits to the Declaration of Daniel Stewart, are necessarily embraced by the District's pleadings and properly considered in a facial determination of the Court's jurisdiction.  *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).  The District's Complaint references the MDE decision, the District's due process hearing request, and its motion for summary disposition.  (*See* Compl. ¶¶ 32-36, 66, 68.)

filed motions for summary disposition, conceding that there were no facts in dispute and instead seeking a legal determination about whether the District's policy of refusing specialized transportation outside its boundaries violated M.N.B.'s rights under the IDEA. The District's motion for summary disposition characterized the case as involving a "single issue of law," which was whether the District fulfills its obligations under the IDEA when it transports an open-enrolled student with an IEP that includes transportation to and from school as a related service only between the child's school and the District's boundary. (Stewart Decl., Ex. 1 ("District's Mot. for Summ. Disp.") at 1.)

In an order dated March 17, 2017, the ALJ granted M.N.B.'s motion for summary disposition, which contended that the District's new transportation practice violated M.N.B.'s "stay-put"[3] IEP, which included transportation between home and school.  The ALJ agreed and determined that the District was responsible for providing for transportation between home and school as part of its FAPE obligations under the IDEA. (Order at 15.)  The ALJ considered the due process hearing request as the District presented it—a request for a legal determination about the District's obligations and not a factual determination about M.N.B.'s transportation needs.  (*Id.* at 15, n.111 ("The issue raised by the parties concerned only the question of inter-district transportation and not whether the Student's transportation requirements could be met by other means.").)

---

[3] Under 20 U.S.C. § 1415(j), when a child's IEP is disputed, the child's "then-current educational placement" shall remain operative during the pendency of the dispute.  *See also* 34 C.F.R. § 300.518.  This is known as the child's "stay put" IEP, or, the IEP that is in place during any hearing or litigation regarding the IEP.  *See M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 463 (8th Cir. 2008) (describing "'stay put' provision" as one of the procedural safeguards under the IDEA).

Following the ALJ's order, the parties submitted letters on the amount of reimbursement to be provided to the parent and the ALJ ordered the District to reimburse the parent for two round trips each day of school for the mileage between M.N.B.'s home and her school.  (Compl. ¶ 69.)[4]  Having lost twice in its quest for legal ratification of its new transportation policy—in the MDE systemic decision and before the ALJ—the District initiated this action seeking review of the ALJ's March 17 Order, which rejected the District's transportation practice as applied to M.N.B. and held the District to be responsible for transportation between M.N.B.'s home and school.

## LEGAL STANDARD

The District's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction.  The District carries the burden of establishing that this cause of action is within the Court's jurisdiction.  *Butts Feed Lot, Inc. v. United States*, 690 F.2d 669, 670 (8th Cir. 1982).  The Court must ensure that it has subject matter jurisdiction before proceeding.  *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009).  "A court may not assume 'hypothetical jurisdiction' to decide 'contested questions of law when its jurisdiction is in doubt.'"  *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).  The Court should examine the face of the District's Complaint and dismiss the case if the District has not stated facts that, if proven, would support the Court's

---

[4] Following the ALJ's order on reimbursement, the District requested reconsideration of the ALJ's decision on the reimbursement issue, but the ALJ agreed with M.N.B. that the ALJ lacked jurisdiction to hear a request for reconsideration because the ALJ's decision is final.

jurisdiction. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). In making this determination, the Court can also consider materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint." *Carlsen*, 833 F.3d at 908 (internal quotations omitted).

## ARGUMENT

This action should be dismissed for lack of jurisdiction because the District failed to exhaust its claims in the administrative proceeding below. The District's current claims are premised on its allegations about M.N.B.'s need for specialized transportation in her IEP, but the District did not raise this issue before the ALJ. Instead of exhausting the issue before the ALJ when it had the chance, the District now asks this Court to make a determination about whether M.N.B. needs transportation from her home, without the benefit of administrative proceedings on that issue. Accordingly, the Court lacks jurisdiction over issues and claims not exhausted in the administrative proceeding.

I.  **This Court lacks jurisdiction over the District's appeal because it failed to exhaust any claims about M.N.B.'s IEP or the extent of her transportation needs before the ALJ.**

Under 20 U.S.C. § 1415(i)(2), a party aggrieved by the findings in a due process hearing has the "right to bring a civil action with respect to the complaint presented" in the due process hearing. "[T]he failure to raise, and to preserve, an issue in the administrative process—absent a demonstration that circumstances warrant a relaxation of the exhaustion requirement—renders the unappealed HO's decision 'final,' and constitutes a waiver of such an issue in a subsequent civil action." *Moubry v. Indep. Sch. Dist. 696, Ely, Minn.*, 9 F. Supp. 2d 1086, 1100 (D. Minn. 1998). Courts lack jurisdiction over issues and claims

that have not been exhausted through the IDEA's administrative remedies.  *See J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 951 (8th Cir. 2017) (affirming district court dismissal for lack of subject matter jurisdiction where plaintiff failed to exhaust administrative remedies).[5]

### a. The District did not ask the ALJ to analyze M.N.B.'s IEP or her individualized specialized transportation needs.

The District did not raise factual issues related to M.N.B.'s needs or her IEP in the administrative proceeding.  Before the ALJ, the District asked only for a purely legal determination that its obligation to transport students with disabilities begins and ends at the District's boundaries, regardless of what a student's IEP says or the extent of his or her individual needs.  This is clear from the opening of the District's memorandum in support of its motion for summary disposition, which stated:

---

[5] The Eighth Circuit has not explicitly stated that failure to exhaust is jurisdictional, but it is treated as such in *Francis Howell*, 850 F.3d 944.  Multiple district courts within the Eighth Circuit, including the District of Minnesota, have considered the issue and also found it to be jurisdictional.  *See, e.g.*, *R.N. ex rel. Nevill v. Cape Girardeau 63 Sch. Dist.*, 858 F. Supp. 2d 1025, 1029 (E.D. Mo. 2012) ("A federal court does not have subject matter jurisdiction over claims that do not meet the exhaustion requirement under the IDEA."); *Smith v. Rockwood R-VI Sch. Dist.*, Civ. No. 16-1226, 2017 WL 1633065, at *2 (E.D. Mo. May 2, 2017) (noting that Eighth Circuit has observed that exhaustion goes to the "very power to hear the case" (quoting *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 867 (8th Cir. 2006))); *A.B. ex rel. Barclift v. Westonka Indep. Sch. Dist. 277*, Civ. No. 14-0466, 2015 WL 321415, at *5, n.1 (D. Minn. Jan. 26, 2015) (dismissing case for lack of jurisdiction for failure to exhaust and observing "[s]ister courts have observed that exhaustion under the IDEA is a question of subject matter jurisdiction, and that the question goes directly to the power of a court to hear the case" (internal quotation and citation omitted)); *S.A.S. ex rel. W.S. v. Hibbing Pub. Sch.*, Civ. No. 04-3204, 2005 WL 1593011, at *2 (D. Minn. July 1, 2005) ("If a plaintiff fails to exhaust their administrative remedies under the IDEA, the court is deprived of subject matter jurisdiction.").

This case involves a single issue of law. That issue is as follows:

> When a student is enrolled because of parental preference under Minnesota's Enrollment Options Act and the open enrolled student is a child with a disability with an IEP that includes transportation to and from school as a related service, does the school district fulfill its obligation to provide a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1415 et. seq. and Minnesota Chapter 125A when it provides special education transportation from the school district's boarder to the child's school and refuses the Parent's request for special education transportation from the student's home to the school district boarder [sic]?

(Stewart Decl., Ex. 1 at 1.)  The District clearly intended to raise only the legal question of the District's obligations under Minnesota and federal law and did not raise any questions or dispute about M.N.B.'s individual needs or the meaning of the language in her IEP.

The relief the District requested in its summary disposition motion also demonstrates the limited scope of the issue before the ALJ.  The District asked the ALJ to change M.N.B.'s IEP to "state that the provision of transportation as a related service is required only between Osseo's boundary and M.B.'s school" and to order "that the District did not violate the IDEA or Minnesota Statutes Chapter 125A when it refused the Parent's request that the District provide or pay for special transportation from a bus stop near M.B.'s home to Osseo's boundary."  (Stewart Decl., Ex. 1 at 14.)

The ALJ disagreed with the District's legal interpretation of its transportation obligations and found that the District was obligated to provide for M.N.B.'s transportation between home and school, even though her home is outside the District's boundaries.  In so ruling, the ALJ determined that the District was responsible for M.N.B.'s transportation as a necessary related service between "home and school."  (Order at 15.)  The ALJ's Order

10

on the parties' cross-motions for summary disposition reflected the limited scope of the issues raised in the due process hearing.  The ALJ noted that neither party argued that there were any material facts in dispute and framed the issue before her as "whether the Student, who requires specialized transportation pursuant to her IEP and has open enrolled pursuant to Minnesota's Open Enrollment Program, is entitled to publically-funded transportation from her home to the District into which she has open enrolled."  (Order at 7.)  The ALJ also explicitly noted that the parties did not dispute issues related to M.N.B.'s needs, such as whether transportation could be met by other means.  (*See id.* at 7; 15, n.111.)

Now, in this action, the District has changed course.  It seeks review of issues that it did not raise in the administrative proceeding—a factual determination about the meaning of M.N.B.'s IEP and the extent of her transportation needs.  In the "Grounds for Appeal" section of its Complaint, the District lists the mistakes it alleges the ALJ made and they center on **factual determinations** about M.N.B.'s IEP and her transportation needs.  (*See, e.g.*, Compl. ¶¶ 74-77.)  For example, the District alleges that the ALJ "erred when she determined without any factual basis whatsoever that the Student needed the accommodation of 'door to door transportation' in order to receive a FAPE" and that "[t]here was no evidence in the record that the Student's educational needs required her to be picked up at her front door."  (Compl. ¶¶ 76-77; *see also id.* ¶¶ 74-75 (alleging the "ALJ erred when she found without any support in the record, that the prior contract between the Parent and her resident school district was incorporated into the Student's IEP;" and that "[t]he plain language of the IEP stated that the Student need to be transported to and from school" and "did not state that the Student was to be transported from the door of her home

11

to her open enrolled school").)[6]  Moreover, the District's requested relief is premised on

an interpretation of what M.N.B.'s IEP calls for.  (*See* Compl. ¶ 81 (asking that the Court

order "[t]hat the District meets its obligations under IDEA and Minn. Stat. 125A when

M.N.B. is transported to and from the District boundary to school *as called for in her IEP*."

(emphasis added)).)[7]

But in the administrative proceeding, the District clearly chose **not** to raise issues

about the extent of M.N.B.'s individual transportation needs, what her IEP says, or whether

she requires "door to door" transportation.  Therefore, the Court should find that the

District failed to exhaust these issues before the ALJ and dismiss for lack of jurisdiction.

This circumstance is precisely what Congress sought to avoid in creating the exhaustion

requirement: "unnecessary judicial intervention, by a Federal Court, into an area of

educational policy which is traditionally in the orb of the States."  *Moubry*, 9 F. Supp. 2d

at 1099 (citations omitted).  Instead, the exhaustion requirement "allows for the exercise

of discretion and educational expertise by state and local agencies, affords full exploration

of technical educational issues, furthers development of a complete factual record, and

---

[6] *See also* Compl. ¶ 59 ("The plain language of the IEP does not state that the Student must be transported from the door of her home to school. There was no evidence before the ALJ that supported her conclusion that the Student's disabilities required her to be transported from her door to the school rather than from a District bus stop to her school. The only evidence in this case was that the Student was to be transported alone. . . ."); ¶ 70 ("The Parent asserts that Osseo must transport M.N.B. from the door of her home to the school of her choice. Osseo contends that the District must provide special transportation only from Osseo's boundary to M.N.B.'s school."); ¶ 50.

[7] Again, the District asked the ALJ to determine only the validity of its transportation practice, which precluded transportation across district boundaries for any student.  The District did not ask the ALJ to determine what M.N.B's specialized transportation needs were or what was "called for" in her IEP, yet the District now asks the Court to do so.

promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.* at 1098–99 (internal quotation marks and citations omitted). The District's failure to exhaust has deprived the Court of those benefits here.

This is similar to the circumstances in *Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 655 (8th Cir. 1999). There, the Eighth Circuit reversed the district court's decision rejecting the hearing panel's decision that the school district did not commit procedural violations in handling the student's claim. The Eighth Circuit agreed with the school district that the student had not raised the issue of procedural violations in the hearing, where the student's counsel expressly stated that the student was not asking the hearing panel to address procedural issues. The district court considered the student's argument in a post-hearing brief that the student had not intended to waive all of the procedural issues and ruled in the student's favor. The Eighth Circuit reversed. It found that the student's "[c]ounsel's broad declaration that Grace's parents sought a determination based only on the merits of the proposed IEPs undermines his post-hoc attempt after the hearing to narrow the scope of the waiver to matters of a more technical nature" and that "[t]he basic issues that they raised before the hearing panel for determination did not include a procedural challenge." *Id.* As a result, the court concluded that the student "did not properly raise at the administrative level the issue of whether the School District permitted them to participate sufficiently in the development of her IEP" and found that claim to be barred for failure "to exhaust her administrative remedies with regard to the issues upon which she seeks judicial review." *Id.*

13

Other courts have similarly found that a party failed to exhaust IDEA administrative remedies for claims and arguments that were not raised in the administrative proceeding. *See, e.g., Moubry*, 9 F. Supp. 2d at 1100 (finding, where student did not appeal hearing officer's decision to not address issue of speech services but then later tried to raise the issue in the federal civil action, that "there is no evidence that the Plaintiff presented an argument, to the [hearing officer], to that effect, or that the [hearing officer] understood the Plaintiff was making any such claim of error," and thus the court could not consider the speech services issue); *see also P. v. Greenwich Bd. of Educ.*, 929 F. Supp. 2d 40, 46 (D. Conn. 2013) ("Based on the plaintiffs' request for a hearing, their post-hearing brief, and the contents of the Decision, the court concludes that the plaintiffs here did not exhaust their administrative remedies with respect to alleged violations by the Board of the Child Find provision for any school year prior to the 2009–2010 school year. Thus, any such claim is being dismissed because the court lacks subject matter jurisdiction."); *M.L. ex rel. A.L. v. El Paso Indep. Sch. Dist.*, 610 F. Supp. 2d 582, 598 (W.D. Tex. 2009), *aff'd sub nom. M.L. v. El Paso Indep. Sch. Dist.*, 369 Fed. App'x 573 (5th Cir. 2010) ("Because Plaintiff failed to raise such arguments before the Hearing Officer, Plaintiff failed to exhaust her administrative remedies and the Court will not address these arguments."); *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 570 F. Supp. 2d 1212, 1220–21 (E.D. Cal. 2008) (finding that, where request for due process hearing related to events occurring from September 1, 2003 through October 6, 2006, plaintiff could not "raise issues based on events that occurred after October 6, 2006, as they could not have been raised, or exhausted, at the administrative level").

**b. The District's case must be dismissed for lack of jurisdiction because of its failure to exhaust administrative remedies.**

The District chose not to ask the ALJ to address the extent of M.N.B.'s individual transportation needs or the meaning of her IEP. Now, the District shifts gears and challenges M.N.B.'s specialized transportation needs, (*see, e.g.,* Compl. ¶¶ 76-77), and her IEP, (*see id.* ¶¶ 59, 75), even though these issues were not raised before the ALJ. The District's failure to exhaust administrative remedies with regard to the issue of M.N.B.'s transportation needs and the meaning of her IEP dooms the District's claims for relief in this action. The District asks the Court to find that it is not required to provide transportation outside its boundaries for M.N.B. as part of its FAPE obligations, (*see id.* ¶¶ 80-82), but that determination depends on fact questions about M.N.B.'s needs that the District failed to raise before the ALJ. Accordingly, the Court should dismiss this action for lack of jurisdiction.

The District's request in the administrative proceeding—that the ALJ determine that its legal obligations to transport open-enrolled students end at its boundaries, regardless of individual student needs—did not depend on a factual determination about the extent of M.N.B.'s needs. The District asked that the ALJ simply determine that it is **never** required to provide for a student's, including M.N.B.'s, transportation outside its boundaries. Now, the District asks this Court to determine that the District is not required to transport M.N.B. between home and school for a different reason, because "[t]here was no evidence in the record that [M.N.B.'s] educational needs required her to be picked up at her front door (such as may be the case for a student who is medically fragile)" and because her IEP did

not include the specific language that "she was to be transported from the door of her home to her open enrolled school." (Compl. ¶¶ 77, 75; *see also id.* ¶ 81 (requesting that the Court order that "the District meets its obligations under IDEA and Minn. Stat. 125A when M.N.B. is transported to and from the District boundary to school as called for in her IEP," and therefore asking the Court to interpret the meaning of M.N.B.'s IEP language).) There was no evidence about M.N.B.'s individual needs before the ALJ precisely because the District failed to raise any claims or arguments about that issue; the District failed to exhaust the issue. Without a determination on the issues of M.N.B.'s needs or the meaning of her IEP, the Court cannot grant the relief the District seeks and this action must be dismissed.

When a party fails to raise a fact issue in the administrative proceeding that is necessary to the relief it seeks in a subsequent civil action, the action must be dismissed for lack of jurisdiction. The Tenth Circuit's decision in *McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868 (10th Cir. 2007), is instructive here. In *McQueen*, the student filed a due process hearing request to challenge a school district's policy (which was based on guidance from the state) that limited special education services during the summer to only one type of service (maintenance of skills) as contrary to the IDEA. *Id.* at 871. The student asked the hearing officer to find that the limited summer services denied him a FAPE. The parties agreed to bifurcate the proceedings and have the hearing officer first address the legal issue of whether the district's policy violated the IDEA. Then, after a ruling on that legal question, the parties could either appeal the ruling to the state administrative law judge or proceed to an evidentiary hearing on the student's

16

individual circumstances.[8]  *Id.*  The hearing officer concluded that the policy did not violate the IDEA and explicitly noted that his decision "did not consider whether [the Student's IEP] as implemented" provided a FAPE.  *Id.* (internal quotations and citations omitted).  Rather than proceed to an evidentiary hearing, the parents immediately sought review of the hearing officer's decision before an ALJ, and the ALJ similarly noted that his review was limited to the legal issue of whether the district's policy violated the IDEA on its face, but that the factual issue of whether an individual student would be jeopardized by the policy was not raised and would require more "evidence than was presented in the limited hearing" before the hearing officer.  *Id.* at 872 (internal quotations and citations omitted).  The parents sought review of the ALJ's decision in federal district court, seeking a determination that the policy violated the IDEA and reimbursement for expenses the parents paid for alternate summer programming for the student.  The district court reached the issues on the merits and sided with the school district.  *Id.*

On appeal, the Tenth Circuit reversed the district court's merits determination, finding that the district court should have dismissed the case for lack of jurisdiction.  *Id.* at 874.  The court found that the factual issue of whether the student's IEP provided a FAPE was not part of the administrative proceedings and therefore, the student had failed to

---

[8] *McQueen* appears to have occurred in a state with a two-tier hearing system—first a hearing officer in the district and then an administrative law judge at the state level. Minnesota has a single-tier system—only the administrative law judge from the state Office of Administrative Hearings.  This distinction does not affect the relevance of *McQueen* to this case.

exhaust administrative remedies as required by 20 U.S.C. § 1415 before seeking an order on the legality of the district's policy and awarding the student reimbursement. *Id.*

In *McQueen*, as here, one party's choices in prosecuting the case in the administrative proceedings precluded a factual determination about the child's specific needs. In *McQueen*, the parents opted not to pursue an evidentiary hearing, which meant that there were no administrative proceedings on the factual question of what was required for FAPE for the individual student. As a result, when the parents sought a determination in federal court that the district's policy was contrary to IDEA because it failed to provide the student with a FAPE, the court did not have jurisdiction because the FAPE inquiry necessarily rested on the student's individual needs, a fact issue that the parents failed to raise in the administrative proceeding.

Here, the District could have disputed the meaning of the language in M.N.B.'s IEP or the extent of her transportation-related needs in its due process hearing request or during the hearing process itself, but it did not. It now asks the Court to determine that the District meets its FAPE obligations to M.N.B. by providing for transportation within its boundaries because M.N.B.'s individual needs do not warrant transportation between home and school. But in order to determine whether or not the District provides FAPE to M.N.B. if it were to transport her only from its boundary rather than from her home, the Court would need to make a determination about what her individual needs are. There is no evidence in the hearing record about her individual needs—beyond what it says in her IEP—because the District failed to raise and exhaust that issue. The ALJ rejected the District's request— that the ALJ ratify its revised transportation policy of not transporting students with

specialized transportation in their IEPs outside District boundaries—and found that the District failed to meet its FAPE obligations to M.N.B. when it applied the policy to her.[9] Instead of limiting the issues before the Court to a review of the ALJ's rejection of the District's legal position, the District now asks the Court to do something it did not ask of the ALJ—to consider fact issues about the extent of M.N.B.'s individual transport needs and what is required for FAPE. This inquiry rests on issues that were not addressed in the administrative proceeding because the District failed to raise them.

Just as the parents' choice to forego the fact issue in the administrative proceeding resulted in a dismissal of all claims in *McQueen*, the Court should dismiss this action for lack of jurisdiction.

## II.  The District's requested relief is fundamentally flawed.

There is an additional problem with the District's requested relief, which is found in its Complaint at paragraphs 80-82 as follows:

80.    The District seeks an order holding that the District meets its obligation under the IDEA and Minn. Stat. Ch. 125A by providing transportation as a related service from Osseo's boundary to the school of enrollment when the student's IEP team determines the student requires special education transportation; and

81.    That the District meets its obligations under IDEA and Minn. Stat. 125A. when M.N.B. is transported to and from the District boundary to school as called for in her IEP; and

---

[9] The ALJ found that M.N.B.'s IEP calls for her to be transported "between home and school." (Order at 15.) To the extent the District contends that there is a meaningful difference between "door to door" transportation and transportation "between home and school," that question is a fact dispute that was not exhausted and is precisely the type of question of education policy that Congress intended to be first addressed by hearing officers. *See Moubry*, 9 F. Supp. 2d at 1099.

82.     That the Parent is not entitled to future reimbursement for travelling to the open enrolled school four times per day nor is the District required to reimburse the Parent except for the 2016-2017 school year and only for two trips per day from the District boundary and to the school.

(Compl. ¶¶ 80-82.)  The relief the District requests in paragraph 80 is beyond the scope of the facts of this case and would deprive other students in the District of their interest in transportation benefits.   In this paragraph, the District asks for an order regarding its transportation obligations to all students with transportation needs in their IEP, not just M.N.B.   (*Compare* Compl. ¶¶ 80, with *id.* ¶¶ 81-82.)   Indeed, M.N.B. is not even mentioned.   Such relief would affect the rights of other open-enrolled students in the District who are currently receiving transportation between home and school as part of their IEPs.   Specifically, this relief would deprive the 64 students who were part of the MDE complaint of the transportation benefits they secured as a result of the corrective action in that proceeding. [10]   Disposing of this claim for relief in this proceeding would impair those 64 students' ability to protect their interests in the transportation benefits they are receiving as a result of the MDE complaint proceeding and subsequent dismissed

---

[10] Moreover, the relief the District requests in paragraph 80, standing alone, is not rooted in a case or controversy, as the District's obligation to students besides M.N.B. are not at issue in this case, rendering any decision about them an advisory opinion. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite." (citation omitted)); *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinion[s] advising what the law would be upon a hypothetical state of facts." (internal quotations and citations omitted)).

appeal.[11]   Thus, to the extent the District seeks relief beyond a determination about M.N.B.'s transportation services and the Court accepts jurisdiction, such a claim for relief should be dismissed because the District failed to join the 64 students, who are required parties under Federal Rule of Civil Procedure 19(a)(1)(B)(i).  *See* Fed. R. Civ. P. 19(b) (allowing dismissal for failure to join necessary parties); *see also*, *Omega Demolition Corp. v. Hays Grp., Inc.*, 306 F.R.D. 225, 230 (D. Minn. 2015) (dismissing case for failure to join necessary parties under Rule 19).

Paragraph 80 is beyond the scope of this case and attempts an end-run around the rights of necessary parties.  The Court should not grant the relief requested in that paragraph.

## CONCLUSION

Because the District failed to exhaust the administrative processes required by the IDEA and fails to request viable relief, this Court lacks subject matter jurisdiction.  The Court should thus dismiss the District's Corrected Amended Complaint.

---

[11] To the extent the District maintains its position that it is **never** required to transport students with transportation needs in their IEP beyond its boundaries, that position is likely barred by claim preclusion, as the District had the opportunity to fully litigate that issue in its appeal of the MDE's complaint decision, which has now ended with a determination that the District may be required under the IDEA to transport open-enrolled students outside its boundaries because of a student's individual needs. *Cf. Haberer v. Woodbury Cty.*, 188 F.3d 957, 962-64 (8th Cir. 1999) (dismissing action as barred under collateral estoppel where the action raised identical issue as one already addressed in state court proceeding).

Respectfully submitted,

Date: August 29, 2017

/s/Daniel Stewart
Daniel Stewart (#0278919)
Maren Hulden (#0396043)
Mid-Minnesota Legal Aid
Minnesota Disability Law Center
430 1st Ave N, Suite 300
Minneapolis, MN 55401
Tel: 612.746.3769
Email: djstewart@mylegalaid.org
        mhulden@mylegalaid.org

ATTORNEYS FOR DEFENDANTS