# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

In the Matter of Osseo Area Schools,
Independent School District No. 279,

                Plaintiffs,

M.N.B., by and through her Parent,
J.B.,

                Defendants.

Case No. 0:17-cv-2068-DSD-HB


**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINSTRATIVE RECORD**

---

## INTRODUCTION

Defendant M.N.B. ("Student" or "M.N.B.") asks the Court to affirm the judgment of the Administrative Law Judge ("ALJ") in the proceedings below.  The ALJ found that Plaintiff, Osseo Area Schools, ISD No. 279 ("the District") violated the Student's rights under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, by refusing to provide her with transportation between her home and school because she lives outside the District and is enrolled in the District as part of Minnesota's open enrollment program.   Student M.N.B. has an Individualized Education Plan ("IEP"), which states that she needs the related service of specialized transportation in order to get to school.   The ALJ found that the District was required to provide M.N.B. with transportation between home and school because it is called for in her IEP.  The District appeals the ALJ's decision in this action.

The Court should affirm the ALJ's decision and find that the District violates M.N.B.'s rights by failing to provide her with transportation between home and school, as stated in her IEP, because the IDEA requires districts to provide related services such as transportation when such services are required for a student to receive a free appropriate public education. The fact that M.N.B. lives outside the District's boundaries and is enrolled in the District through Minnesota's open enrollment program does not change the District's obligations under the IDEA.

## STATUTORY BACKGROUND

The IDEA requires school districts to ensure that students with disabilities receive a free appropriate public education ("FAPE"). FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 188–89 (1982). "Almost as a checklist for adequacy under the Act, the definition also requires that such instruction and services be provided at public expense and under public supervision, . . . and comport with the child's IEP." *Id.* The mechanism for ensuring FAPE is the IEP, which is "the centerpiece of the statute's education delivery system for disabled children." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017). The IEP is to be developed by the IEP team, which is a group of individuals that includes various school staff and the student's parents. 20 U.S.C. § 1414(d)(1)(B). An IEP should include the special education and related services a student needs in order for the IEP to be "reasonably calculated to enable a child to make

2

progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 994, 999.

The IDEA contemplates that certain "related services" may be necessary in order for a student to receive FAPE. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017). The IDEA lists possible related services, including

> transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26); 34 C.F.R. § 300.34. The Supreme Court has found that related services, even though not directly educational services, may be necessary in order for a student to attend school every day. *See*, *e.g.*, *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 891 (1984) ("The Act makes specific provision for services, like transportation, for example, that do no more than enable a child to be physically present in class . . . ."); *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 79 (1999) (finding that the related service of one-on-one nursing was necessary, as "[i]t is undisputed that the services at issue must be provided if Garret is to remain in school.").

The IDEA provides dispute resolution processes in the event a parent and school do not agree about a student's IEP. A parent or school can raise disputes about a student's IEP, or whether the student is receiving FAPE, by filing an administrative complaint, which entitles the filing party to an "impartial due process hearing" before a

3

local or state educational agency.  20 U.S.C. §§ 1415(b)(6), (f).  The IDEA includes a

provision to address what happens with the student's IEP during the dispute.  It states:

> [D]uring the pendency of any administrative or judicial proceeding
> regarding a due process complaint notice requesting a due process hearing
> under § 300.507, unless the State or local agency and the parents of the
> child agree otherwise, the child involved in the complaint must remain in
> his or her current educational placement.

34 C.F.R. § 300.518.  This is referred to by courts as the "stay-put provision" and

"ensures an uninterrupted continuity of education for a disabled child pending

administrative [or judicial] resolution."  *Light v. Parkway C–2 Sch. Dist.*, 41 F.3d 1223,

1227 (8th Cir. 1994), *cert. denied*, 515 U.S. 1132 (1995).[1]

Two Minnesota laws are relevant to this dispute.  First, Minnesota has an open

enrollment statute that permits students to enroll in districts where they do not reside,

subject to certain limitations (most commonly, space limitations for each grade level set

by the receiving school board).  *See* Minn. Stat. § 124D.03.  This statute does not

distinguish between students with disabilities and students without disabilities.  Second,

when a student with a disability enrolls in a non-resident district through this open

enrollment statute, Minnesota rules state that the open enrolled district is "responsible for

assuring that an appropriate program is available for the pupil including the notice and

hearing provisions," while the resident district is responsible for the cost of the education

---

[1] IDEA's stay-put provision is a long-standing and integral requirement of a parent's due
process rights.  The Eighth Circuit has stated that the stay-put provision is literally and
rigorously enforced, consistent with its purpose "'to strip schools of the *unilateral*
authority they had traditionally employed to exclude disabled students.'"  *Hale v. Poplar
Bluff R–I Sch. Dist.,* 280 F.3d 831 (8th Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305,
323 (1988)).

program.[2]  Minn. R. 3525.0800, Subd. 8.  Other Minnesota statutes detail the process for how districts receiving open enrolled students receive reimbursement for transporting non-resident open enrolled students.  *See, e.g.*, Minn. Stat. § 127A.47, subd. 7; Minn. Stat. § 123B.92.

**FACTUAL BACKGROUND**

M.N.B. is currently an eleven year old student who has an IEP that includes the related service of specialized transportation.  (ECF No. 28, Sealed Record at 40 (ALJ Order on Summ. Disp.).)  In the 2016-17 school year, she was in 5th grade.  (ECF No. 29, Sealed Record at 217 (IEP).)  She is enrolled in the District and attends school at North Education Center, which is operated by Intermediate School District #287.  (*See id.* at 132 (Intermediate District #287 Referral Form).)  North Education Center is not located within the District but is located within the geographic boundaries of a separate school district.  (*Id.* at 207-08 (ISD 279 Transportation Contract) (showing North Education Center's address as 5530 Zealand Ave. N., Minneapolis, MN 55428).)  M.N.B. resides in Big Lake, MN, which is outside the geographic boundaries of the District.  (*Id.* at 127 (Enrollment Form).)  During the 2015-2016 school year, M.N.B. was enrolled in the Big Lake school district and attended school at a program run by Northeast Intermediate District #916, which was located outside the Big Lake school district.  (*See id.* at 152-58 (IEP and Transportation Contract).)  M.N.B.'s most recent IEP was developed during that school year (2015-2016) and includes a related service of

---

[2] The Rule refers to the open enrolled district as the "providing district," which is defined as the district assigned the responsibility for providing special education services under Minn. R. 3525.0800.  *See* Minn. R. 3525.0210, Subp. 35.

specialized transportation.  (ECF No. 28, Sealed Record at 154 (IEP).)  Specifically, this IEP states that M.N.B. "will be transported individually to and from school. [M.N.B.] struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her."  (*Id.*)  In the 2015-2016 school year, M.N.B.'s parent transported her between her home in Big Lake and the Northeast Intermediate District #916 school and the Big Lake district reimbursed the parent for mileage expenses.  (*Id.* at 23 (Order on Summ. Disp.).)

In May 2015, the District made a policy decision to stop providing transportation between home and school for students with IEPs who live outside the District and are open enrolled into the District.  (ECF No. 29, Sealed Record at 161 (Aff. of Troy Schreifels).)  This policy change meant that, for students whose IEPs included special transportation needs, the District would provide the specialized transportation only within its boundaries.  (*Id.*)  Other non-resident, open enrolled District students[3] who lived outside of the District's boundaries and had specialized transportation in their IEPs filed a complaint with the Minnesota Department of Education.  The Department of Education investigated a systemic complaint against the District on behalf of over 60 students who were open enrolled into the District and had specialized transportation on their IEPs but who were told, as a result of the District's policy change, that they would no longer receive transportation as listed in their IEPs.  (ECF No. 29, Sealed Record at 175-195 (Dep't of Ed. Compl. Decision).)  On October 12, 2016, the Department issued a decision finding that the District's new transportation policy violated the IDEA because it failed to

---

[3] M.N.B. was not part of this group of students.

permit individualized determinations about whether transportation between home and school would be necessary to provide an individual student with FAPE. (*Id.*)

The District appealed the Department's decision to the Minnesota Court of Appeals, but the appeal was dismissed because the District failed to serve the parents of the students involved in the complaint and the District did not appeal the Court of Appeals' order. (ECF No. 30, Sealed Record at 167-170 (Minn. Ct. of Appeals Order).) Because the District failed to properly appeal the Department's decision, that decision remains final. As part of the corrective action for that decision, the District was required to discontinue its transportation practice regarding non-resident open enrolled students with transportation written into their IEPs. (*See* ECF No. 29, Sealed Record at 194 (Dep't of Ed. Compl. Decision); *see also* ECF No. 47, Decl. of Maren Hulden, Exhibit C at 27-28; 34 (showing District's notification to parents and school staff that the District discontinued its practice of only providing transportation from the District's border).[4])

Meanwhile, at the beginning of the 2016-2017 school year, M.N.B. open enrolled in the District. (ECF No. 30, Sealed Record at 291-292 (Statewide Enrollment Option Form).) Her open enrollment application form lists "Cedar Island," a middle school in the District, as where M.N.B. would attend. (*Id.* at 292.) The District and M.N.B.'s parent agreed, through the IEP team process, that M.N.B. would attend a Level IV school, or segregated school setting. (*Id.* at 336 (2016 IEP).) The District indicated M.N.B.'s IEP team agreed to "implement the last agreed upon or 'stay put IEP.'" (ECF

---

[4] The Court permitted limited discovery in this case and, in an order by the Magistrate Judge, allowed M.N.B. to supplement the record with certain documents, including these documents. (*See* ECF No. 54, Order, at 4-5.)

No. 24, Second Am. Compl. at 12.)  The District assigned her to North Education Center. (ECF No. 30, Sealed Record at 336 (2016 IEP).)   As stated above, North Education Center is located outside the geographic boundaries of the District and is operated by Intermediate District #287.   (*See* ECF No. 29, Sealed Record at 207-08 (ISD 279 Transportation Contract); *id.* at 132 (Intermediate District #287 Referral Form).)   Once she was placed at North Education Center, M.N.B.'s parent asked to be reimbursed for transportation expenses between M.N.B.'s home and the school she would attend, but the District refused, relying on its policy that it provides for transportation only within its boundaries.  (ECF No. 30, Sealed Record at 271 (District's M.B. Log).)   The District offered to reimburse the parent for mileage only between the District's boundary and M.N.B.'s school.  (ECF No. 29, Sealed Record at 206-208 (Daley Email and proposed contract to J.B.).)   The District filed a request for a due process hearing pursuant to 20 U.S.C. § 1415, requesting that the ALJ order that M.N.B.'s "IEP state that the provision of transportation as a related service is required only between Osseo's boundary and M.B.'s school . . . ."   (ECF No. 30, Sealed Record at 206 (District's Am. Due Process Hearing Compl.).)   M.N.B. also filed a due process hearing request, contesting the District's policy decision and asserting that the District failed to follow the requisite individualized due process requirements under federal law.  (*Id.* at 131 (Student's Due Process Compl.).)   Both parties filed motions for summary disposition, conceding that there were no facts in dispute and instead seeking a legal determination about whether the District's policy of refusing specialized transportation outside its boundaries violated M.N.B.'s rights under the IDEA.  (ECF No. 28, Sealed Record at 39 (Order on Summ.

Disp.).)  The District's motion for summary disposition characterized the case as involving a "single issue of law," which was whether the District fulfills its obligations under the IDEA when it transports an open enrolled student, with an IEP that includes transportation to and from school as a related service, only between the child's school and the District's boundary.  (ECF No. 29, Sealed Record at 110 (District's Mot. for Summ. Disp.).)

In an order dated March 17, 2017, the ALJ granted the Student's motion for summary disposition and denied the District's motion for summary disposition.  The ALJ found that the Student's "stay-put" IEP includes "transportation between home and school" and that the District is therefore responsible for providing for transportation between home and school as part of its FAPE obligations under the IDEA.  (ECF No. 28, Sealed Record at 53 (Order on Summ. Disp.).)  The ALJ considered the due process hearing request as the District presented it—a request for a legal determination about the District's obligations, and not a factual determination about M.N.B.'s transportation needs or the nature of the parent's decision to enroll M.N.B. in the District.  (*Id.* at 53 n.111 ("The issue raised by the parties concerned only the question of inter-district transportation and not whether the Student's transportation requirements could be met by other means.").)

Following the ALJ's order, the parties submitted letters on the amount of reimbursement to be provided to the parent and the ALJ ordered the District to reimburse the parent for two round trips each day of school for the mileage between the Student's home and the Student's school.  (ECF No. 28, Sealed Record at 22 (Order on Mot. for

9

Reimb.).)   The District requested the ALJ to reconsider her decision on the reimbursement issue, but the ALJ agreed with M.N.B. that the ALJ lacked jurisdiction to hear a request for reconsideration.  (*Id.* at 7 (Order on Mot. for Recon.).)  The District then filed this this action, appealing the ALJ's order determining that the District is required to provide for transportation for M.N.B. as part of its obligations under the IDEA.

## STANDARD OF REVIEW

Under the IDEA, a party may seek review of an administrative decision by bringing an action in federal district court.  34 C.F.R. § 300.516; *Sneitzer v. Iowa Dep't of Educ.*, 796 F.3d 942, 948 (8th Cir. 2015).  The court must review the administrative proceedings, hear additional evidence if necessary, and determine whether the preponderance of the evidence shows that the school district complied with the IDEA's requirements.  *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 803 (8th Cir. 2011); *see also I.E.C. v. Minneapolis Pub. Sch., Special Sch. Dist. No. 1*, 34 F. Supp. 3d 1006, 1013 (D. Minn. 2014) (stating standard for motion for judgment on the record). The party challenging the decision has the burden of proof.  *E.S. v. Indep. Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998).  "A district court is to render an independent decision based on a preponderance of the evidence in the administrative record, but the court also must give 'due weight' to the results of the administrative proceedings and not substitute its 'own notions of sound educational policy for those of the school authorities which they review.'"  *C.B. ex rel. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn.*,

636 F.3d 981, 988–89 (8th Cir. 2011) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205–06 (1982)).

## ARGUMENT

The Court should affirm the ALJ's determination that the District is required to provide specialized transportation for M.N.B. between her home and school.  The ALJ correctly determined that transportation between home and school is in M.N.B.'s IEP and therefore is required in order for M.N.B. to receive FAPE.  The District's obligation to provide M.N.B. with the services in her IEP is not limited by its geographic boundaries or affected by the fact that she is an open enrolled student.  Further, the District cannot evade its responsibility to provide M.N.B. with FAPE by making a policy decision to not provide certain services.

## I.  The District is Required to Provide M.N.B. with Transportation Between Home and School Because it is in her IEP and Required for her to Receive FAPE

The ALJ correctly determined that the District is required to provide M.N.B. with transportation between her home and school as a related service.  This is a straightforward application of the basic elements of the IDEA.  The IDEA provides that IEP teams are to identify the special education and related services that a child needs in order to receive FAPE.  Related services can include services necessary to enable a child to actually be in school all day.  For example, in *Irving Independent School District v. Tatro*, 468 U.S. 883 (1984), the Supreme Court found that a school district was responsible for providing a student with a type of catheterization that she needed in order to be at school all day because it was a related service necessary for the student to receive

11

FAPE.  *Id.* at 890.  The Court emphasized the importance of related services under the IDEA: "[t]he Act makes specific provision for services, like transportation, for example, that do no more than enable a child to be physically present in class."  *Id.* at 891. Similarly, the Supreme Court in *Cedar Rapids Community School District v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 69 (1999), found that a school district was required to provide one-on-one nursing services to a student at school and on the bus because they were necessary for the student to attend school.  *Id.* at 79 ("It is undisputed that the services at issue must be provided if Garret is to remain in school.  Under the statute, our precedent, and the purposes of the IDEA, the District must fund such 'related services' in order to help guarantee that students like Garret are integrated into the public schools."). In the present case, the related service of transportation is necessary for M.N.B. to access FAPE.

A.  The ALJ Correctly Interpreted M.N.B.'s Stay-Put IEP and Found the District is Responsible for Transportation between Home and School to Satisfy FAPE

M.N.B.'s IEP—the IEP in place when this dispute arose and the transportation language that continues to be in her IEP—states that she requires the related service of transportation.  The parties do not dispute that M.N.B.'s current stay-put IEP includes the transportation that has been part of her IEP since her 2015 IEP developed by the Big Lake district and the Northeast Metro Intermediate District #916.[5]  This IEP states that

---

[5] Portions of a disputed IEP can have "stay-put" effect.  *See Pachl ex rel. Pachl v. Seagren*, 373 F. Supp. 2d 969, 976 (D. Minn. 2005) (allowing a single provision of student's IEP to be covered by "stay put").  The IDEA's stay-put provision is triggered when a change in placement is proposed; "a fundamental change in, or **elimination of, a**

she will be transported "individually to and from school" and notes that she "struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her." (ECF No. 29, Sealed Record at 154 (IEP).) The District admits that M.N.B.'s IEP team agreed to follow her "stay put IEP." (ECF No. 24, Second Am. Compl. at 12.)[6] The District did not and has not disputed that this IEP accurately describes M.N.B.'s transportation needs.[7] Instead, it argues that even with this language, it nevertheless is not responsible for transportation beyond its geographic boundaries.[8] The ALJ disagreed, finding that:

---

**basic element of the educational program**" constitutes a change in placement. *Lunceford v. District of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C. Cir. 1984) (emphasis added).

[6] Beyond the District's failure to agree to provide for M.N.B.'s ongoing transportation needs, the District has also failed to implement M.N.B.'s stay-put IEP, which calls for transportation to and from school. This is a violation of 34 C.F.R. § 300.17(a) (special education and related services must be provided at public expense) and 34 C.F.R. § 300.518 (IDEA's "stay-put" provision). The ALJ noted the "District did not question its responsibility for transportation under the 'Stay-put' IEP." (ECF No. 28, Sealed Record at 23 (Order on Mot. for Reimb.).) Instead of reimbursing the parent for round trips between home and school, the District filed the instant appeal.

[7] In fact, this was a piece of a stipulation between M.N.B. and the District: "The Individual Education Program team made an individualized determination that M.N.B. required the related service of transportation." (ECF No. 42, Jt. Ltr. at 2.)

[8] If the District thought that M.N.B. did not need specialized transportation as a related service, the District could propose to remove this related service from her IEP with a prior written notice to the parent and give the parent a chance to object. If the parties could not agree, the District could file a due process hearing complaint on this issue. However, it did not do so, and instead raised the single issue on whether it could limit its transportation responsibilities to only transportation within its borders. (ECF No. 29, Sealed Record at 110 (District Mot. for Summ. Disp.); ECF No. 28, Sealed Record at 41 (Order on Summ. Disp.).)

> The Student's current IEP is a stay-put IEP developed in October 2015 by her then IEP team at Karner Blue Education Center. That IEP includes the necessary related service of transportation between home and school. While the Student remains open enrolled in the District, the District is responsible for the Student's FAPE and therefore for implementation of the stay-put IEP.

(ECF No. 28, Sealed Record at 53 (Order on Summ. Disp.).)

Thus, the ALJ determined that the District is obligated to provide the transportation because it is a related service needed for FAPE. The ALJ's analysis is a correct and straightforward application of the IDEA's requirements.

B. <u>The ALJ Correctly Determined that the District's FAPE Obligation does not Categorically End at its Geographic Boundaries</u>

The District contended, before the ALJ, that it is not obligated to provide the transportation services outside its boundaries. The District did not and has not argued that M.N.B. does not **need** transportation outside its boundaries, but rather that the District's FAPE obligations to M.N.B. simply end at its geographical boundaries. On its face, this argument does not make sense – if M.N.B. needs specialized transportation, she needs it between home and school in order for her to access FAPE.[9]

The ALJ was correct to reject the District's argument. As an initial matter, nothing in the IDEA states or suggests that a district's obligation to provide special education and related services necessary for FAPE ends at district boundaries. The

---

[9] Compare this to a different specialized transportation need: if, for example, M.N.B. needed a wheelchair and the transportation-related service in her IEP addressed that need, it would be obviously inadequate for a district to refuse to provide specialized transportation between home and school. *See D.C. v. Ramirez*, 377 F. Supp. 2d 63 (D.D.C. 2005) (finding district was required to transport student to the door because of student-specific wheelchair needs).

District cannot and has not pointed to any provision in the IDEA that supports its argument.

### 1. Federal Case Law Supports the ALJ's Decision

Furthermore, the highest court addressing this precise issue found that the FAPE obligations districts carry under the IDEA are not limited by geographic boundaries.  The Fifth Circuit, in *Alamo Heights Independent School District v. State Board of Education*, 790 F.2d 1153 (5th Cir. 1986), addressed a dispute over whether a school district was required to provide transportation as a related service to a location outside the district after school because his mother was working.  The court found that "transportation required as a related service under the Act is not arbitrarily limited by the geographic boundaries of the school district so long as it is required for the special circumstances of the handicapped child and is reasonable when all of the facts are considered."  *Id.* at 1160 (internal quotations omitted).  There, the district argued that even if transportation as a related service is "required to enable a handicapped child to benefit from special education, out-of-district transportation, because it is out-of-district, is not."  *Id.*  The court disagreed, and instead found that "[u]nless the transportation request is shown to be unreasonable, the Act requires that such transportation be provided as a related service."  *Id*.  Here, M.N.B. requires transportation to benefit from school – she needs it to attend school – and the transportation called for in her IEP is reasonable.[10]

---

[10] The District stipulated that cost was not a consideration in its denial of transportation between home and school for M.N.B.  (ECF No. 42, Jt. Ltr. at 2.)  Further, in the present case, M.N.B.'s family seeks reimbursement for travel expenses, so the District does not

### 2.   Federal Guidance Supports the ALJ's Decision

The federal agency responsible for administering the IDEA has issued guidance indicating that the District is responsible for transportation.  As the ALJ noted, the Office for Special Education and Rehabilitation Services' *Letter to Lutjeharms* (OSERS, 1990) (ECF No. 29, Sealed Record at 102-106), examined a very similar case to M.N.B.'s.  In its guidance, the Office responded to a request for policy guidance on whether a Nebraska district needed to provide transportation across district boundaries when a student enrolled in the district as part of an open enrollment program.  The Office determined that, where there is a statewide inter-district choice program and a state law designation that the choice district is responsible for ensuring FAPE is provided, the choice district must provide transportation as required as a related service.  (*See id.* at 104.)  The Office went on to find that the choice district would be required to provide transportation even outside district boundaries: "Such transportation would generally . . . include transportation from the child's home to the school, **regardless of whether the school is located in the resident district or the choice district**." (*Id*. at 104 (emphasis added).)  *Letter to Lutjeharms* offers clear guidance for this situation.  Minnesota, like Nebraska, makes clear that the open enrolled district is responsible for FAPE.  *See* Minn. R. 3525.0800, Subd. 8.  Thus, when M.N.B. enrolled in the District,

---

have to assign a bus, a driver, any necessary aide, and does not have to create a route or a schedule.

the District assumed responsibility for FAPE, which includes the responsibility to provide any related services she needs in order to receive FAPE.[11]

The Court should afford *Letter to Lutjeharms* substantial deference in this case. Similar letters from the Office have been found to be interpretive guidance that should be given due weight. *See Metro. Sch. Dist. of Wayne Twp., Marion Cty., Ind. v. Davila*, 969 F.2d 485, 490-92 (7th Cir. 1992). The Supreme Court in *Honig v. Doe* deferred to a similar letter interpreting a phrase in the precursor to the IDEA, noting that the statute did not define the phrase in question. 484 U.S. 305 (1988). The Court wrote: "[g]iven this ambiguity, we defer to the construction adopted by the agency charged with monitoring and enforcing the statute." *Id.* at 326; *see also United States v. Mead Corp.*, 533 U.S. 218, 227–28 (2001) ("[T]he well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," and "[w]e have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer") (internal quotation marks omitted). The Office for Special Education and Rehabilitation Services is the agency responsible for interpreting the IDEA, and its opinion on out-of-district transportation when a student is open enrolled is longstanding and has not changed in twenty-eight years; it should be afforded substantial

---

[11] Further, when a student transfers from one district to another during a school year, IDEA directs the new district to either adopt the prior IEP or to develop and implement a new one. 34 C.F.R. § 300.323(e). Here, since there was a disagreement over the scope of M.N.B.'s transportation provision in her old IEP, the District is bound by IDEA's "stay put" requirements to continue implementing the old IEP. See *Pachl ex rel. Pachl v. Seagren*, 373 F. Supp. 2d 969, 976 (D. Minn. 2005) (allowing a single provision of student's IEP to be covered by "stay put").

deference.  *Cf. Franklin v. I.N.S.*, 72 F.3d 571, 572 (8th Cir. 1995) ("Having consistently adhered to its view about crimes of reckless endangerment for nearly twenty years, the BIA's interpretation is entitled to deference.").

### 3.  State Guidance Supports the ALJ's Decision

The ALJ also discussed Minnesota Department of Education longstanding guidance in support of her decision.  Specifically, the ALJ cited the Department's 2012 guidance called "Transportation of Public School Open Enrollment Options Students," which states that:

> [i]f the enrollment options pupil has a disability and the pupil requires special transportation to get to and from school, then the enrolling district would be required to transport the pupil from the pupil's home to the education site.

(*See* ECF No. 28, Sealed Record at 52 (Order on Summ. Disp.); ECF No. 29, Sealed Record at 108-109 (Excerpt from 2012 Guidance).)  Similarly, the Department's 2010 guidance called "Reference Guide to Transporting Students with Disabilities and Special Transportation for Selected Students in Minnesota," states that "[i]f a student requires special transportation to get to and from school, then district (B) must transport to and from home and the education site in district (C)."  (ECF No. 29, Sealed Record at 8.) This reference guide defines "district (B)" as the "educational options" district and "district (C)" as the "providing district."  (*Id.*)  As applied to M.N.B., this guide indicates that the District is the educational options district; Intermediate District #287, where M.N.B. attends school at the North Education Center, is district (C).   Thus, the Department of Education's consistent position has been that the District is obligated to

provide for transportation to an open enrolled student if it is necessary to provide that student with FAPE.[12]  Indeed, the District is already partially following this guidance as it fully accepts its cross-district transportation responsibilities for M.N.B. in its offer to reimburse M.N.B.'s parent for transportation outside of the District's geographical boundaries to M.N.B.'s school in Intermediate District #287.  (ECF No. 29, Sealed Record at 206-208 (Daley Email and proposed contract to J.B.).)

Relying on this caselaw and guidance, the ALJ correctly determined that the District is responsible for transportation beyond its borders when a student requires such transportation in order to receive FAPE.  The ALJ found—and the District does not dispute—that M.N.B. requires specialized transportation to and from school as part of her IEP. The Court should affirm the decision of the ALJ and require the District to assume responsibility for M.N.B.'s transportation between home and school.

[12] It should also be noted that the Minnesota Legislature recognizes and supports cross-district transportation for open enrolled students by providing regulation and funding for districts to claim and receive reimbursement.  First, Minn. Stat. § 127A.47, subd. 7, indicates districts that incur transportation-related expenses are entitled to reimbursement from the state department of education when a non-district student is enrolled in an alternative attendance program, such as Minnesota's Open Enrollment Act, at Minn. Stat. 124D.03.    Second, Minn. Stat. § 123B.92 provides additional detail on state transportation aid reimbursement for specialized transportation from a student's home to school.  It has multiple definitions and requirements about what can be reimbursed. Third, the Minnesota Legislature has repeatedly authorized funding for cross-district transportation expenses over many years.  Most recently, the Minnesota Legislature, as part of a special session bill on education passed on May 27, 2017, passed a specific session law to allocate specific funds "for transportation of pupils attending nonresident districts under Minnesota Statutes, section 124.03" incurred during the years 2018 and 2019.  Laws 2017, 1st Spec. Sess., Ch. 5, Art. 1, Sec. 19, Subd. 3.  The Minnesota Legislature routinely passes session laws for this precise type of expense.  Laws 2017, 1st Spec. Sess., Ch. 5, Art. 13, Sec. 2, Subd. 3.; see, e.g., Laws 2013, Reg. Sess., Art 1, Sec 58, Subd. 3 (for 2014 and 2015); Laws 2015, Reg. Sess., Art 1, Sec 27, Subd. 3 (for 2016 and 2017).

### II. Open Enrollment Does Not Change the District's Responsibility to Provide M.N.B. with FAPE, including the Related Service of Transportation

Before the ALJ and in this proceeding, the District's position is that it is not responsible for transporting M.N.B. outside its boundaries – even though her IEP states she needs to be transported individually to and from school – because she is open enrolled. There is no basis for this position.

Open enrollment under Minnesota law is not comparable to a family choosing a school within a district.[13] When a family exercises school choice within a district for educational purposes, that same district remains responsible for the student's FAPE. When a family exercises its rights under Minnesota's open enrollment statute, however, the responsibility for FAPE shifts to the district the student has open enrolled into. Minn. R. 3525.0800, Subd. 8 provides that "[w]hen a pupil is placed outside of the district residence by the parent or pupil for the purpose of education and in accordance with a statutory education choice enrollment act, the . . . providing district shall be responsible for assuring that an appropriate program is available for the pupil including the notice and hearing provisions." The "providing" district here is the District. *See* Minn. R. 3525.0210, Subp. 35. M.N.B.'s parent placed her outside her resident district as part of Minnesota's open enrollment statute for the purpose of education since her prior placement was no longer available to M.N.B. (ECF No. 30, Sealed Record at 283 (Parent

---

[13] The District has relied on the Eighth Circuit's decisions in *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 973 (8th Cir. 1999), and *Fick ex rel. Fick v. Sioux Falls Sch. Dist. 49-5*, 337 F.3d 968 (8th Cir. 2003) in support of its position. These cases involve intra-district situations and are inapposite factually and legally.

Stmt. Incl. with Dep't of Ed. Compl.).)  Thus, the Big Lake school district is no longer responsible for providing her with FAPE and, instead, the District is.  For some students, specialized transportation is not required for FAPE, but, as discussed above, for M.N.B. it is.  Nothing in Minnesota's open enrollment statute suggests that the District can evade its FAPE responsibilities simply because M.N.B. is an open enrolled student.

In fact, if Minnesota's open enrollment statutes were interpreted to permit an open enrolled district to refuse to provide a service required for FAPE, it would undermine the basic requirements set by the IDEA.[14]  The IDEA sets the basic floor of what states must ensure students receive, and if states accept federal funds pursuant to the IDEA, they may not go below the basic floor of requirements set by the IDEA.  *See* 20 U.S.C. § 1407(a)(1) (requiring every state that receives funding under the IDEA to "ensure that any State rules, regulations, and policies relating to this chapter conform to the purposes of this chapter").  As courts have observed, the IDEA sets "minimum federal standards," *Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 658 (8th Cir. 1999), or a "basic floor of opportunity," *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (internal quotations omitted), that states may not go beneath.  Rather than creating circumstances that would go below the basic floor of opportunity set by the IDEA, Minnesota's open enrollment statute shifts the full responsibility for FAPE

---

[14] For example, a district would not be permitted to discontinue providing a student with necessary one-on-one nursing services, as in *Garret F*, or necessary catherization services as in *Tatro*.  *See Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66 (1999); *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883 (1984).

to the open enrolled district and does not excuse certain services because a student is open enrolled or does not live within the district.  *See* Minn. R. 3525.0800.

### III.    The District Cannot Avoid its Responsibility to Provide M.N.B. with FAPE by Creating a Policy Against Out-of-District Transportation

The District's proffered rationale for denying M.N.B. the transportation called for in her IEP is that it adopted a policy of not providing specialized transportation outside District boundaries to open enrolled students who do not live within the District.  (ECF No. 29, Sealed Record at 159-161 (Aff. of Troy Schreifels); 163-165 (Aff. of Kate Emmons); 166-167 (policy change letter to District cabinet members); 168 (policy change letter to parents).)   Before this policy change, the District would have taken responsibility for M.N.B.'s specialized transportation between her home and her school. This policy change was a multi-year effort by the District to save burden and costs.  In the 2014-2015 school year, the District began "examining" this issue.  (ECF No. 29, Sealed Record at 163-165 (Emmons. Aff.).)  As a part of this examination, the District "looked at costing and the impact of scheduling logistics," among other issues.  (*Id.*). The District noted that "even though some costs could be recovered from the state, the cost recovery was partial only and reimbursement was not received with the same school year."  (*Id.*)  On May 13, 2015, the District "made the decision to change the District's practice" on providing transportation to non-resident students for the upcoming 2015-2016 school year.  (*Id.*)

This policy was rejected as counter to the IDEA by the Minnesota Department of Education.  In Complaint Decision 16-138C, the Department concluded that the District

violated the IDEA by failing to provide parents of open enrolled non-resident students the opportunity to meaningfully participate, failing to provide written notice about the transportation change, and failing to follow the necessary individualized procedural requirements to make such a change.  (ECF No. 29, Sealed Record at 192-93 (Dep't of Ed. Compl. Decision).)  In essence, the Department concluded that the District's policy approach was an impermissible short cut that deprived students of their individual entitlements to transportation as a related service.  (*Id.* at 192.)  As a result of these multiple violations, the Department ordered the District to change its policy on cross-district transportation and to remove "boilerplate language" in IEP templates.  (*Id.* at 194 (Corrective Action #1 and #2 of Compl. Decision).)  The District took multiple steps to show compliance, including notifying parents and District staff that the new policy of not providing out-of-district transportation had changed.  (*See, e.g.*, ECF No. 28, Sealed Record at 58 (District letter to families); 62 (District communication with staff); 63 (District sample letter to parents).)  Although the District continues to refuse to provide such transportation to M.N.B., it is providing such transportation pursuant to this policy change to other students.  (ECF No. 47, Decl. of Maren Hulden, Exhibit A, RFA Nos. 11-12.)[15]  Nevertheless, the District continues to use its policy—which it claims to have discontinued—to deny the related service of specialized transportation between home and school that is called for in M.N.B.'s stay-put IEP.  Additionally, this policy approach

---

[15] Despite the admissions that it is providing out-of-district transportation to some students with disabilities, the District has asserted to this Court that its "current practice is to transport open enrolled students from Osseo's boundary to the child's school" and that "[t]his applies whether the student is disabled or not."  (ECF No. 24, Second Am. Compl. at 5.)

seeks to circumvent an individualized determination on an IEP. Rather than consider M.N.B.'s individual needs, and whether transportation is required between home and school in order for her to receive FAPE, the District unilaterally determined that it would not provide transportation outside its boundaries and then refused to consider whether M.N.B. might need transportation outside its boundaries.[16] This unilateral decision violated several of M.N.B.'s rights under IDEA, including her right to access related services that are in her IEP, *see* 20 U.S.C. § 1414(d)(3) and 34 C.F.R. § 300.34, being provided with services pursuant to her stay-put IEP, *see* 34 C.F.R. § 300.518, having access to FAPE, *see* 34 C.F.R. § 300.17, having her parents participate in IEP-related decisions, *see e.g.* 34 C.F.R. §§ 300.322, 300.501(b); and being informed of M.N.B.'s individualized due process rights, *see* 34 C.F.R. §§ 300.503, 300.504, as well as her right to formally object to proposed changes, *id.* *See also* Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46540-01, Aug. 14, 2006 ("A child's IEP Team is responsible for determining whether transportation between school and other locations is necessary in order for the child to receive FAPE.").

Further, this policy does not change the District's obligation to provide M.N.B. with the services required for her to receive FAPE. The court in *D.C. v. Ramirez*, 377 F. Supp. 2d 63 (D.D.C. 2005), addressed a similar circumstance where the district refused to

---

[16] Although the District failed to consider her individual needs, M.N.B.'s stay-put IEP includes transportation between home and school, as determined by the ALJ. (*See* ECF No. 28, Sealed Record at 53 (Order on Summ. Disp.).)

transport a student in a wheelchair to his door on the basis of a district policy.  The court

found the district could not rely on its policy to deny the student needed services:

> Defendants are requesting a transportation aide for C.G–R. not because of
> convenience or preference, but because the absence of such an aide has left
> C.G–R. unable to receive the education and related services guaranteed by
> the IDEA and prescribed in his IEP. Because C.G–R. needs a transportation
> aide to meet his education needs, rather than simply to provide convenience
> for his parents, *Fick* and *Timothy H.* are inapplicable. Id. Although
> plaintiff's transportation policy may be facially neutral, it is not exempt
> from review as it applies to defendants in this case.

*Id.* at 70 (internal citations omitted) (citing *Fick ex rel. Fick v. Sioux Falls Sch. Dist. 49-

5*, 337 F.3d 968 (8th Cir. 2003) and *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178

F.3d 968 (8th Cir. 1999), cases where transportation policies were upheld when exception

requests were not based on students' IEP needs)).  Similarly here, the District's policy

decision does not undermine its obligation to consider and provide for M.N.B.'s

individual needs as required for FAPE.

## CONCLUSION

The Court should affirm the ALJ's decision that the District is responsible to

provide M.N.B. with the related service of transportation between home and school, as

called for in her IEP.  The IDEA is clear that services a child needs in order to participate

in, and attend, school are required in order for the child to receive FAPE.  Nothing in the

IDEA suggests that a district's FAPE obligations end at district boundaries.  Rather, the

relevant interpretations of the IDEA have concluded that districts may be responsible for

out-of-district transportation when a student's individual needs require it.  The fact that

M.N.B. is an open enrolled student does <u>not</u> change what she is entitled to under the

IDEA and the District cannot evade its IDEA obligations by establishing policies against providing certain categories of services.  The ALJ's decision should be affirmed.

Respectfully submitted,

Date: April 23, 2018

/s/Daniel Stewart
Daniel Stewart (#0278919)
Maren Hulden (#0396043)
Mid-Minnesota Legal Aid
Minnesota Disability Law Center
430 1st Ave N, Suite 300
Minneapolis, MN 55401
Tel: 612.746.3769
Email: djstewart@mylegalaid.org
          mhulden@mylegalaid.org

ATTORNEYS FOR DEFENDANTS