UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| In the Matter of Osseo Area Schools, Independent School District No. 279, | Case No. 0:17-cv-2068-DSD-HB |
| Plaintiffs, | |
| | **DEFENDANT M.N.B.'S REPLY** |
| M.N.B., by and through her Parent, J.B., | |
| Defendants. | |

_____

## INTRODUCTION

The case involves a straightforward reading of federal and state special education law and controlling precedent.  School districts are required to provide specialized transportation to a student's home outside a school district's boundaries when it is required for the student to receive a free appropriate public education ("FAPE") as outlined in a student's individualized education plan ("IEP").  Plaintiff Independent School District 279 ("the District") is responsible for providing Defendant Student M.N.B. ("M.N.B." or "the Student") with FAPE under Minnesota's law governing open enrollment.  M.N.B.'s IEP calls for her to receive specialized transportation to and from school, a determination made based on her disability-related needs, not parent preference.  Her parent simply asks that the District fulfill its FAPE responsibilities by providing the related service called for in her IEP.

The administrative law judge agreed with M.N.B.'s straightforward reading of the law and found that M.N.B.'s IEP calls for her to be transported individually between home and school, a fact which the District does not dispute.  The District is responsible

1

for providing the transportation listed in her IEP because it is the school district that Minnesota law designates as responsible for ensuring that M.N.B. receives FAPE. Once the District accepted her for open enrollment, Minnesota law requires that it provide her with the services necessary for her to receive FAPE. The District has refused to provide this IEP-included service and is therefore denying M.N.B. access to FAPE.

The District's position that it is not responsible for FAPE outside its boundaries is meritless. There is nothing in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, that limits districts' responsibility for specialized transportation within district boundaries when such transportation is required for FAPE. There are no Eighth Circuit cases on point. Neither case the District cites involved a dispute about whether the districts in those cases were making FAPE available. In fact, the transportation policy in one of those cases made an exception to ensure that students received FAPE. The only federal court of appeals decision on point supports the administrative law judge's decision, as does the only U.S. Department of Education interpretive letter on this issue. The Court should affirm the administrative law judge's determination that the District is responsible for providing M.N.B. with transportation between home and school as called for in her IEP.

**I.   Specialized Transportation Between Home and School is Required for Student M.N.B. to Receive FAPE and is Listed in her IEP.**

The Student's IEP calls for M.N.B to "be transported individually to and from school" (ECF No. 28, Sealed Record at 154 (IEP).) The District has never disputed that M.N.B. needs this specialized transportation because of her disability. The District

refused to provide this service because it made a unilateral policy decision[1] to end specialized transportation outside its boundaries, not because the District contested that M.N.B. actually needed the related service of specialized transportation listed in her IEP.[2] The parent is requesting that the District provide the transportation listed in M.N.B.'s IEP, which is based on her disability and educational needs as determined by her IEP team.

This request has nothing to do with "parent preference;" it has to do with access to FAPE. M.N.B. enrolled in the District pursuant to the open enrollment program available to all Minnesota students, and the District placed her at the school she attends, even though this was not the school the parent requested on the open enrollment application. (*See* ECF No. 30, Sealed Record at 291-292 (Statewide Enrollment Option Form) (noting first choice school is Cedar Island).) Once placed at the District's choice of school, M.N.B.'s parent has simply sought access to the specialized transportation called for in

---

[1] This unilateral decision violated several of M.N.B.'s rights under IDEA, including her right to access related services that are in her IEP, *see* 20 U.S.C. § 1414(d)(3) and 34 C.F.R. § 300.34, being provided with services pursuant to her stay-put IEP, *see* 34 C.F.R. § 300.518, having access to FAPE, see 34 C.F.R. § 300.17, having her parents participate in IEP-related decisions, *see e.g.* 34 C.F.R. §§ 300.322, 300.501(b), and being informed of M.N.B.'s individualized due process rights, *see* 34 C.F.R. §§ 300.503, 300.504, as well as her right to formally object to proposed changes, *id*. (*See also* ECF No. 57 at 22-25 (Student's Mem. in Support of Mot. for J. on the Admin. Record).)

[2] (*See* ECF No. 29, Sealed Record at 110 (District Mot. for Summ. Disp.) (arguing before administrative law judge that the sole issue in this case is whether a district is required under the IDEA to provide out of district transportation).) If the District wanted to dispute whether M.N.B. truly needs the specialized transportation in her IEP, it should have raised that fact issue during the administrative hearing.

M.N.B.'s IEP at no cost to the parent, so she can access FAPE just as other students whose IEP teams concluded that specialized transportation was needed to access FAPE.

The administrative law judge reasonably, and in light of her expertise handling special education disputes, determined that the language in the Student's IEP meant individual transportation between her home and school. (ECF No. 28, Sealed Record at 53 (Order on Summ. Disp.).) The Court should give the administrative law judge's determination about the meaning of the Student's IEP due weight. *See C.B. ex rel. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn.*, 636 F.3d 981, 988-89 (8th Cir. 2011). The District has not challenged the administrative law judge's interpretation of what her IEP requires and whether it is required for FAPE, it simply maintains that it is not required to provide that related service because it involves providing her the related service of transportation outside its boundaries.

**II.     The District is Responsible for Providing Related Services in M.N.B.'s IEP Because Those Services are Necessary for her to Receive FAPE.**

Nothing in the IDEA or controlling precedent indicates that the District can evade its responsibility to provide the related service of transportation listed in the Student's IEP. This is a basic reading of the IDEA: it requires that districts provide eligible students with FAPE, which is accomplished through an IEP and can include related services when necessary for a student to benefit from education (including in order to simply be there). *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S.Ct. 988, 994 (2017) (describing FAPE requirement); 20 U.S.C. § 1401(26) (defining related services); 34 C.F.R. § 300.34 (listing related services); *Cedar Rapids Cmty. Sch.*

4

*Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 79 (1999) (finding related service of one-on-one nursing was necessary for student to attend school); *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 891 (1984) (finding catheterization service was required for student to be at school).

Nothing in the IDEA indicates—and the District has pointed to no authority suggesting—that a district is not obligated to provide FAPE or IEP services simply because they are located outside the District. The District's only support for its position are the Eighth Circuit's decisions in *Fick ex rel. Fick v. Sioux Falls Sch. Dist. 49-5*, 337 F.3d 968 (8th Cir. 2003), and *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968 (8th Cir. 1999). But those cases do not say that districts avoid responsibility for related services required for FAPE simply because they are located outside the district's boundaries. *Fick* and *Timothy H.* hold that when a district has a general policy about how it will provide FAPE—such as an intra-district transportation policy—it is not required to make exceptions to that policy that are not required for FAPE. *See Fick*, 337 F.3d at 969-70 (finding "a school district may apply a facially neutral transportation policy to a disabled child without violating the law when the request for a deviation from the policy is not based on the child's educational needs, but on the parents' convenience or preference," where the district had a policy against transporting outside neighborhood attendance zones **unless** "the transportation is necessary for the child to benefit from her IEP"); *Timothy H.*, 178 F.3d at 973 (finding that the "establishment of a special bus route for a single student **who admittedly receives a free appropriate public education at her neighborhood school**, but who wants to go to another school for reasons of parental

5

preference, is an undue burden on the school district") (emphasis added).  Here, the District is enforcing a policy that actually denies FAPE for M.N.B. by denying her a related service called for in her IEP, even though the District is responsible to provide her with FAPE because she is enrolled in the District.³

### III.    Federal Caselaw and Administrative Guidance Support M.N.B.'s Position.

The only federal court of appeals to address the issue of out of district transportation is the Fifth Circuit in *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153 (5th Cir. 1986), which found that "the 'transportation' required as a 'related service' under the Act **is not arbitrarily limited by the geographic boundaries of the school district so long as it is required for the special circumstances of the handicapped child** and is reasonable when all of the facts are considered." *Id.* at 1160 (emphasis added). ⁴

---

³ The District does not contest that it is fully responsible for providing FAPE to M.N.B. pursuant to Minnesota Rule 3525.0800, Subp. 8.  The District attempts to point back to M.N.B.'s resident district, alleging that M.N.B.'s "beef" is with the Big Lake School District.  This "beef" allegation is a red herring.  This dispute is about the District's refusal to provide M.N.B. with FAPE, for which it is responsible under Minnesota's open enrollment program.  *See* Minn. R. 3525.0800, Subp. 8.

⁴ The District argues that *Alamo Heights* is not applicable because the Eighth Circuit declined to apply it in *Timothy H.* or *Fick*.  But those cases addressed a separate legal issue—whether a district can enforce a neutral transportation policy to deny transportation across neighborhood zones when FAPE is not otherwise in issue—whereas *Alamo Heights* addressed the exact legal question presented in this case—whether a district can refuse to meet a student's IEP needs because a piece of the transportation related service occurs outside district boundaries.  Just as *Timothy H.* and *Fick* are not controlling here, *Alamo Heights* would not have been on point in those cases.

As in *Alamo Heights*, the transportation required for FAPE here is reasonable—M.N.B. is simply seeking reimbursement, so the request does not present administrative or scheduling burdens.[5] And the cost of that reimbursement is not at issue—the District has conceded that its decision to refuse to provide the transportation was not based on costs. (ECF No. 42 at 3 (Letter including stipulation: "The Individual Education Program team made an individualized determination that M.N.B. required the related service of transportation. The District did not analyze the cost of transporting M.N.B outside the District boundaries to her home.").) The District did not even consider the cost of the related service when it refused to provide it—it simply refused based on its interpretation of the law. (*See id.*) The administrative law judge reasonably looked to *Alamo Heights* for guidance that nothing in the IDEA indicates that districts avoid their obligation to provide related services required for FAPE simply because those services might occur outside district boundaries.[6]

---

[5] Reimbursement for parent-provided transportation across district boundaries is an acceptable way for a district to meet its related service FAPE obligations when the student's individual needs warrant specialized transportation, as M.N.B.'s IEP indicates she needs here. *Cf. Pinkerton v. Moye*, 509 F. Supp. 107, 115 (W.D. Va. 1981) (finding reimbursement was appropriate where it would have taken much longer to transport via bus route).

[6] The District claims generally that agreeing with the administrative law judge would create extensive administrative and scheduling burdens because of all the students they would have to provide transportation for outside the District. This case is about M.N.B. and her request for reimbursement to ensure that the related service in her IEP is provided. Whether other students require out of district specialized transportation would be an individualized determination based on their unique disability related needs.

The administrative law judge also reasonably relied on guidance from the federal Office for Special Education and Rehabilitation Services, *Letter to Lutjeharms* (OSERS, 1990) (ECF No. 29, Sealed Record at 102-06).  In *Letter to Lutjeharms*, the federal office responsible for interpreting the IDEA found that when a student is open enrolled and the open-enrolled district is responsible for FAPE, that includes specialized transportation between the student's home and school if such transportation is necessary for the student to receive FAPE.  (*See* ECF No. 29, Sealed Record at 104.)

The District argues that *Letter to Lutjeharms* is not persuasive here because it addressed Nebraska law, which it claims differs from Minnesota's open enrollment law because it requires the resident district to provide transportation.  But the Nebraska law the District cites to was passed on April 9, 1990 which was **after** *Letter to Lutjeharms* was published on March 5, 1990.  *See* L.B. 843, 1990 Sess., 91st Leg. § 79–3410 (Neb. 1990) (adopted April 9, 1990) (providing that transportation for open-enrolled students with disabilities be provided by resident district).[7]  *Letter to Lutjeharms* addressed how the IDEA applied to Nebraska law **before** that legislative change, which did not designate either the resident or the open-enrolled district as responsible for transportation, just like Minnesota's law.  (*See* ECF No. 29, Sealed Record at 104 ("Your inquiry explains that under Nebraska's current choice legislation . . . neither the resident district nor the choice district is responsible for providing transportation to children with handicaps participating

---

[7] *Letter to Lutjeharms* discusses the legislative context of the underlying request and notes the possibility of legislative changes depending on the Office's response.  (*See* ECF No. 29, Sealed Record at 102-03.)  As such, it is likely that the Nebraska legislature reviewed the letter and made statutory changes consistent with the Office's guidance.

in its choice program.").)  The Nebraska law at issue in *Letter to Lutjeharms* was identical to Minnesota's law in another important respect—it shifted the obligation for FAPE to the open-enrolled district.  (*See id.*)  The Office found that, under these circumstances, the open-enrolled district is responsible for the related service of transportation between a student's home and school, even if outside district boundaries:

> Under the allocation of responsibility in Nebraska's current choice legislation, it appears that the choice district is the school district responsible for providing FAPE to all children with handicaps participating in the choice program. Under these circumstances, the choice district must provide, or ensure the provision of, necessary transportation to children with handicaps, where such transportation is a related service that is "required to assist a handicapped child to benefit from special education." 34 CFR § 300.13(a) and (b)(13). In other words, if a child is entitled to transportation as a related service, the school district responsible for FAPE, which, in Nebraska, is the choice district, must provide, or ensure the provision of, transportation.

(*Id.*)  Importantly, *Letter to Lutjeharms* also noted that "the extent that Nebraska's choice legislation does not require the choice district to be responsible for providing, or ensuring the provision of, necessary transportation as a related service for children with handicaps participating in its choice program, it is inconsistent with EHA-B and Section 504."  (*Id.*)

*Letter to Lutjeharms* is clear that the effects of an open enrollment allocation of FAPE "may not operate to deny any of the substantive rights and procedural safeguards guaranteed by EHA-B and Section 504."  (*Id.*)  Accordingly, Minnesota's open enrollment statute must not be read to deny students with disabilities access to FAPE if they participate in the open enrollment program in order for the state's program to be consistent with the IDEA.

As the "well-reasoned views of the agenc[y] implementing [the IDEA]," the Court may "properly resort" to *Letter to Lutjeharms* for "guidance." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (internal citations omitted). The Supreme Court has observed that agency interpretations—even those not promulgated through notice and comment rulemaking—may warrant deference depending on several factors, including:

> the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Mead*, 533 U.S. at 228 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

*Letter to Lutjeharms*, which is an interpretive letter setting out the agency's interpretation of the statute's requirements,[8] meets these factors. It is thorough—the analysis of the transportation issue is extensive and takes care to set the relevant background law and then analyzes the issue based on the interpretation of Nebraska law presented in the inquiry. (*See* ECF No. 29, Sealed Record at 104).[9] The reasoning is

---

[8] The Office has the power to issue such interpretive guidance, even if not using the more formal notice and comment rulemaking authority afforded to it under the IDEA. *See Metro. Sch. Dist. of Wayne Twp., Marion Cty., Ind. v. Davila*, 969 F.2d 485, 489-94 (7th Cir. 1992) (rejecting school district's challenge to the Office's authority to issue guidance letter similar to *Letter to Lutjeharms*).

[9] The District contends that *Raymond S. v. Ramirez*, 918 F. Supp. 1280 (N.D. Iowa 1996) offers an example of a court rejecting deference because an interpretive opinion was sparsely reasoned. The interpretive letter in *Raymond* was not the only guidance available—there was also a Notice of Interpretation issued by the Department of Education through notice and comment rulemaking. The court found that the interpretive letter led to the same result as analysis under the more formal guidance, but commented in dicta that, "[t]o the extent the letter ruling states an interpretation different from that in the Secretary of Education's Notice of Interpretation, the court concludes that the Spann letter opinion shall be accorded little weight." *Id.* at 1295. The court in *Raymond* did not reject the letter for paucity; it simply found that the guidance letter there restated the

valid and rooted in basic principles of federal special education law—the essential FAPE requirement imposed upon districts and states that choose to participate in the federal program. (*See id.*) It has stood as the only interpretation of this question for the past 28 years. *Cf. Draper v. Colvin*, 779 F.3d 556, 561 (8th Cir. 2015) (affording deference to agency operating manual that was "part of a relatively long-standing and consistent interpretation that ensures universal applicability of the statute"); *Franklin v. I.N.S.*, 72 F.3d 571, 572 (8th Cir. 1995) ("Having consistently adhered to its view about crimes of reckless endangerment for nearly twenty years, the BIA's interpretation is entitled to deference."). Finally, it is interpretive guidance from the agency entrusted with the responsibility and expertise to administer the IDEA. *Cf. Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1024-27 & n.21 (D. Minn. 2016) (affording persuasive weight to Department of Justice online Q&A, noting favorably that "[b]ecause the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II, its views warrant respect." (quoting *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 597–98 (1999))). *Letter to Lutjeharms* is the best interpretation of the interaction between the IDEA's FAPE requirements and a state open enrollment program like Minnesota's and the administrative law judge appropriately afforded it due weight.[10]

---

previous Notice of Interpretation and led to the same conclusion in the case at hand. *See id*.

[10] The District notes that the Eighth Circuit in *Timothy H.* found *Letter to Lutjeharms* not persuasive—this is precisely because it addresses a different issue. As the Eighth Circuit observed, *Letter to Lutjeharms* "is factually different from the case before this court." *Timothy H.*, 178 F.3d at 973.

The administrative law judge correctly determined that the IDEA requires that, when a district is responsible for FAPE, it must provide the related services necessary for the student to receive FAPE even if the service involves transportation between school and a student's home outside the district. The Court should affirm the administrative law judge's conclusion that the District is required to provide M.N.B. with transportation between home and school because it is required for her to receive a FAPE.

### IV. The District's Arguments Regarding the Adverse State Complaint Decision are an Improper Attempt to Appeal that Decision.

The District devotes substantial attention to the Minnesota Department of Education's adverse decision in Complaint #16-138C, arguing that it was in excess of the agency's authority, and was arbitrary and capricious. These attacks on this state administrative complaint decision suggest that this action against M.N.B. is less about her individual needs and related service request, and more an attempt to revisit that decision. But the District failed to appeal that decision. (ECF No. 30, Sealed Record at 167-170 (Minn. Ct. of Appeals Order).) The District may not now seek to overturn that state administrative complaint decision via this federal district court action against M.N.B.

Complaint Decision #16-138C is so concerning to the District because it shows that the District does not have a consistent, neutrally applied transportation policy—the kind the Eighth Circuit upheld in *Fick* and *Timothy H.*—even if those cases did apply. As a result of this Complaint Decision, the District has abandoned the policy that is the basis of its refusal to provide M.N.B. with FAPE in this case. (*See, e.g.*, ECF No. 28, Sealed Record at 58 (District letter to families documenting change in policy); 62 (District

communication with staff notifying policy change); 63 (District sample letter to parents).) Furthermore, the fact that the District is currently providing transportation for M.N.B. to a school outside District boundaries highlights the inconsistency of the District's policy and demonstrates that transportation to a student's home when required for FAPE is not an unreasonable burden for the District.[11] The District's ad hominem arguments about the merits of Complaint Decision #16-138C decision have no bearing on the present case—the District has already lost its opportunity to challenge that decision. But the fact that the District no longer has the policy it claims it is entitled to enforce against M.N.B. undermines any argument that its decision is supported by *Fick* or *Timothy H.*

## CONCLUSION

The District is responsible for providing M.N.B. with FAPE under Minnesota's law governing open enrollment. M.N.B.'s IEP calls for her to receive specialized transportation to and from school, a determination made based on her disability-related needs, not parent preference. Her parent simply asks that the District fulfill its FAPE responsibilities by providing the related service called for in M.N.B.'s IEP. The District's position that it is not required to provide out of district transportation for open-enrolled students is not supported by statute or controlling precedent. Instead, a straightforward reading of the IDEA and relevant cases makes clear that the District is responsible for providing transportation, even across district boundaries, because that

---

[11] M.N.B.'s IEP team placed her at her school, which is located outside the District, for the same reason the parent requests transportation between home and school—because of her disability related needs.

transportation is required in order for M.N.B. to receive FAPE. The administrative law judge's well-reasoned opinion reflects this straightforward application of the law and should be afforded due weight. The Court should affirm the administrative law judge's decision and grant M.N.B.'s motion for judgment on the administrative record.

Respectfully submitted,
Date: July 2, 2018

/s/Daniel Stewart
Daniel Stewart (#0278919)
Maren Hulden (#0396043)
Mid-Minnesota Legal Aid
Minnesota Disability Law Center
430 1st Ave N, Suite 300
Minneapolis, MN 55401
Tel: 612.746.3769
Email: djstewart@mylegalaid.org
mhulden@mylegalaid.org

ATTORNEYS FOR DEFENDANTS