```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                Civil No. 17-2068(DSD/HB)
```

Osseo Area Schools, Independent
School District No. 279,

      Plaintiff,

v.                                              **ORDER**

M.N.B., by and through her Parent, J.B.,

      Defendant.

      Laura Tubbs Booth, Esq., Roseann Therese Schreifels, Esq. and Booth Law Group, LLC, 10520 Wayzata Blvd., Suite 200, Minnetonka, MN 55305, counsel for plaintiff.

      Daniel J. Stewart, Esq., Maren Hulden, Esq., and Minnesota Disability Law Center, 430 1st Avenue N, Suite 300, Minneapolis, MN 55401, counsel for defendant.

This matter is before the court upon the cross-motions for summary judgment on the administrative record by defendant M.N.B., by and through her parent, J.B., and plaintiff Osseo Area Schools, Independent School District No. 279 (the District). Based on a review of the file, record, and proceedings herein, the court grants M.N.B.'s motion and denies the District's motion.

**BACKGROUND**

This Individuals with Disabilities Education Act (IDEA) case arises out of the District's refusal to provide transportation

services to M.N.B. beyond its border.[1]  M.N.B. is an eleven year old who lives in Big Lake, Minnesota and who suffers from emotional and behavioral disorders.  Admin. R. at 39.[2]  For her third and fourth grade years, the Big Lake School District placed M.N.B. at an out-of-district school - Karner Blue Education Center - so that she could receive special education services.  Id.

In October 2015, Karner Blue Education Center developed an individualized education program (IEP) for M.N.B.  Id. at 40.  Among other accommodations and services, the IEP included transportation "individually to and from school" because M.N.B. "struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her."  Id. at 259.  Consistent with the IEP, M.N.B.'s parents drove her to and from school.  The Big Lake School District reimbursed them for mileage incurred between their home and school.  Id. at 263.

In the fall of 2016, M.N.B.'s parents applied for open enrollment in the District, and the District accepted the

---

[1] The parties agree that busing M.N.B. between home and school would neither be feasible nor consistent with her needs.  As a result, the term "transportation services" refers to the District's obligation to reimburse mileage costs between M.N.B.'s home and school rather than the obligation to actually provide transportation.

[2] The administrative record submitted to the court is paginated with the prefix MDE.  In this order, the references to the record will be referred to as Admin. R. and will correspond to the MDE pagination.

application. M.N.B.'s parents and the District agreed that M.N.B. would attend North Education Center, located in yet another school district, so that she could receive necessary special education services. Id. at 237. M.N.B.'s parents noted, consistent with the existing IEP, that she required individualized transportation to and from school. The District agreed to reimburse M.N.B.'s parents for mileage between the District's boundary and North Education Center, but rejected their request for mileage reimbursement between their home in Big Lake and North Education Center. Id. at 311. The District did not dispute, however, M.N.B.'s need for individualized transportation. Thereafter, the parties unsuccessfully tried to reach agreement on the issue of transportation reimbursement, among other issues. See id. at 329-34. Because of the ongoing disagreement, the parties were unable to fully develop an updated IEP during the 2016 school year, and the 2015 IEP effectively remained in place.

The parties then each filed due process complaints with the Minnesota Department of Education (MDE). See id. at 404-10, 1021-23. The District requested a determination that it is only legally obligated to transport M.N.B. between the District boundary and North Education Center. Id. at 1023. M.N.B. conversely argued that the District failed to provide her with a free appropriate public education (FAPE) by refusing to fully implement her IEP, which requires individualized transportation between her home and

3

school.  Id. at 408-09.

The parties both moved for summary judgment before the administrative law judge (ALJ).  On March 17, 2017, the ALJ issued a comprehensive order in M.N.B.'s favor specifically determining that:

> [M.N.B.'s] current IEP is a stay-put[3] IEP developed in October 2015 by her then IEP team at Karner Blue Education Center.  That IEP includes the necessary related service of transportation between home and school.  While [M.N.B.] remains open enrolled in the District, the District is responsible for [M.N.B.'s] FAPE and therefore for implementation of the stay-put IEP. The stay-put IEP requires [M.N.B.] to be transported by the Parents and that they receive reimbursement for mileage from the District.

Id. at 49.  The ALJ ordered the District to reimburse M.N.B. for all transportation expenses incurred to date and going forward.[4]  Id. at 35.

On June 15, 2017, the District commenced this action against M.N.B., by and through her parent, J.B., under 20 U.S.C. § 1415(i)(2), appealing the ALJ's determination and seeking a

---

[3] A "stay-put" IEP is the last agreed upon IEP which remains in place during the dispute over its terms.  See 20 U.S.C. § 1415(j) (providing that "the child shall remain in the then-current educational placement" during the pendency of administrative or judicial review).

[4] After the parties were unable to agree on the amount past due, the ALJ determined that the District owed J.B. a total of $7,120.96 for the period between October 17, 2016, and April 12, 2017.  Id. at 18.  The ALJ further held that beginning on April 12, 2017, the District was obligated to reimburse J.B. for two daily round trips between M.N.B.'s home and school at the mileage rate set by the IRS.  Id.

determination that it is not required under the IDEA to provide transportation services to M.N.B. between her home and school. Both parties now move for summary judgment on the administrative record.

**DISCUSSION**

I.  **Standard of Review**

"Because judges are not trained educators, judicial review under the IDEA is limited." E.S. v. Indep. Sch. Dist., No. 196 Rosemount-Apple Valley, 135 F.3d 566, 569 (8th Cir. 1998). Although the court must base its decision on the preponderance of the evidence, it must also give "due weight" to the results of administrative proceedings and resist "any impulse to 'substitute [its] own notions of sound educational policy for those of the school authorities.'" Id. at 569 (alteration in original) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)); see also Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1028 (8th Cir. 2003) (quotation and citation omitted) ("While courts are required to make an independent decision based upon a preponderance of the evidence, the fact that the statute requires the reviewing court to receive the administrative records carries with it the implied requirement that due weight shall be given to these proceedings."). The court may grant judgment on the record in an IDEA case even if disputed issues of material fact exist. Indep. Sch. Dist. No. 283

5

v. S.D. ex rel. J.D., 88 F.3d 556, 561 (8th Cir. 1996). The burden of proof rests upon the party challenging the administrative decision. E.S., 135 F.3d at 569.

"The overriding concern of the IDEA judicial review process is to ensure that the child has been provided access to a FAPE." Pachl ex rel. Pachl v. Seagren, 373 F. Supp. 2d 969, 973 (D. Minn. 2005) (citing Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997)). Whether a FAPE has been provided presents a mixed question of law and fact. See id. An educational agency provides a FAPE when it complies with IDEA procedures and offers an educational program "'reasonably calculated to enable the child to receive educational benefits.'" Id. (quoting Rowley, 458 U.S. at 206-07).

## II. Judgment on the Administrative Record

"FAPE, under the IDEA, is an educational experience which provides a disabled child with special education and related services that are tailored to that child's unique needs, by means of an IEP." Slama ex rel. Slama v. Indep. Sch. Dist. No. 2580, 259 F. Supp. 2d 880, 884 (D. Minn. 2003). "The term 'related services' means transportation, and such developmental, corrective, and other supportive services ... as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children." 20 U.S.C. § 1401(a)(26); 34 C.F.R. 300.34(a). In

Minnesota, the district in which the child open enrolls is responsible for ensuring the student receives a FAPE. See Minn. R. 3525.0800, subpt. 8 ("The providing district shall be responsible for assuring that an appropriate program is available for the pupil....").

Although there are many statutes and regulations underlying the IDEA, FAPE, and open enrollment under Minnesota law, the parties have reduced their dispute to the question of whether M.N.B.'s request for transportation services is based on parental preference or the District's obligation to provide a FAPE.[5] M.N.B. argues that the District has failed to meet its obligations to provide a FAPE by refusing to provide transportation services between her home and school because her IEP expressly states that she requires "individualized transportation" to and from school. The District maintains that it has no obligation to provide door-to-door transportation services to M.N.B. because she chose to open enroll in the District based purely on parental preference.

The court agrees with M.N.B. and the ALJ that under the circumstances presented, the District is required to provide door-to-door transportation services to M.N.B. in order to meet its obligation to provide a FAPE to M.N.B.

---

[5] The District characterizes parental preference in two different ways: (1) the request that the District alter its transportation boundaries to accommodate M.N.B., and (2) the parental decision to open enroll. As explained below, under either characterization the District's position lacks merit.

M.N.B.'s IEP expressly states that she requires individualized transportation between her home and school because she "struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her." Admin. R. at 259. As a result, M.N.B.'s individualized transportation is a "related service" necessary to ensure that she receives a FAPE. Because the District is responsible for providing M.N.B. with a FAPE, it is necessarily responsible for providing her with specialized transportation as stated in her IEP.[6] The fact that J.B. made the decision to open enroll M.N.B. in the District does not undermine this conclusion or alter what M.N.B. requires in order to receive a FAPE.

The District relies heavily on the Eighth Circuit Court of Appeals' decisions in Timothy H. v. Cedar Rapids Community School District, 178 F.3d 968 (1999), and Flick v. Sioux Falls School District, 337 F.3d 968 (2003), for the proposition that when a transportation request is based on parental preference, a school district is not required to provide transportation beyond its borders. This reliance is misplaced.

First, as noted, M.N.B.'s "transportation request" is not based on parental preference, but rather on a specific provision in

---

[6] The District does not dispute that it is obligated to provide M.N.B. with a FAPE. Nor does it dispute that M.N.B. requires individualized transportation as set forth in the IEP.

8

her IEP that is necessary for her to receive a FAPE.

Second, Timothy H. and Flick are distinguishable. In Timothy H., the Eighth Circuit upheld a school district policy allowing students to transfer schools intra-district, but requiring that parents provide the transferring student's transportation between school and home. 178 F.3d at 969. The parents of a student with an IEP containing a specialized transportation provision transferred their daughter from her neighborhood school to another school within the district. Id. at 970. They did not dispute that the neighborhood school offered their daughter a FAPE, but stated that they preferred the special education program offered at the school outside of their neighborhood. Id. The Eighth Circuit held that the district was not obligated to provide transportation to and from the new school because the decision to transfer was not based on the child's educational needs, which could have been met at the neighborhood school, but rather on parental preference. Id. at 973.

Likewise, in Flick the parent of a child with an IEP containing a specialized transportation provision requested that her daughter be dropped off at a site outside her neighborhood school boundary, but within the school district. 337 F.3d at 969. The record established that the request was made for personal rather than educational reasons. Id. at 970. Relying on Timothy H., the court held that a school district does not violate the law

9

when, in applying a facially neutral transportation policy, it rejects a request for specialized transportation based on parental convenience or preference.  Id.

Here, however, M.N.B is not challenging an intra-district policy based on parental preference.  Rather, M.N.B. is challenging the District's decision to disregard an important aspect of her IEP that is necessary for her to receive a FAPE at the school the District designated her to attend.  Further, this case involves the open enrollment process rather than concurrent school choices – both of which could provide a FAPE – within the same district.

M.N.B. submitted an open enrollment application in the District, as permitted under Minnesota law.  Once the District accepted her application, M.N.B. became a student of the District rather than a student in her home district of Big Lake.  The District thereafter became solely responsible for providing M.N.B. with a FAPE.[7]  As a result, the choice to open enroll is not the same as choosing one FAPE-providing school over another within a single school district.  Indeed, expanding Timothy H. and Flick to the open enrollment context would allow school districts to avoid their obligation to provide a FAPE by simply establishing that the decision to open enroll was based on parental preference, which is no doubt often the case, rather than educational need.

---

[7] The fact that M.N.B. may also have been able to receive a FAPE through her home district is irrelevant.

The court further notes that the District's conduct in this case appears to disregard an order by the MDE requiring it to assess the need for specialized transportation on an individualized basis. At the time M.N.B. open enrolled in the District, the District had a blanket policy against providing out-of-district transportation services to open enrolled students with IEPs containing specialized transportation provisions. Admin. R. at 281. Parents of those students challenged the policy under the IDEA. On October 12, 2016, the MDE concluded that the policy violated the IDEA because it failed to determine "on a case-by-case basis the individual transportation needs of each [s]tudent."[8] Id. at 299. Although the District acknowledges the MDE order, its conduct as to M.N.B. appears to be consistent with the now-defunct policy.[9] Indeed, the District has rejected M.N.B.'s IEP provision requiring specialized transportation based solely on the fact that she open enrolled in the District rather than based on any determination that M.N.B. does not need individualized transportation between her home and school.

---

[8] The District appealed the order but failed to serve all parties involved, so the Minnesota Court of Appeals dismissed the appeal. The District did not appeal the dismissal. The court rejects the District's attempt to collaterally appeal the MDE decision through these proceedings. See ECF No. 65 at 10-13.

[9] The District nevertheless admits that it provides "specialized transportation to residences outside District boundaries for some open enrolled, non-resident students according to their IEPs." Hulden Decl. Ex. A at 5.

Based on the above, the court finds that the ALJ correctly concluded that the District is required to provide M.N.B. with transportation services as set forth in the IEP and that its failure to do so violates its obligation to provide a FAPE to M.N.B.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. M.N.B.'s motion for summary judgment [ECF No. 55] is granted;

2. The District's motion for summary judgment [ECF No. 59] is denied; and

3. The Administrative Law Judge's March 17, 2017, order on summary disposition is affirmed in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 25, 2018

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court